ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1916.

---

(Continued from Volume 195.)

---

DeMUN ESTATE CORPORATION, Respondent, v. FRANKFORT GENERAL INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, July 18, 1916.

1. **INSURANCE: Construction of Policies.** The language employed in an insurance policy is to be construed in aid of the insurance, rather than to the end of defeating it, and the policy is to be given effect, if permissible, as if it was intended to cover and include the subject of the insurance for which the premium was paid, rather than to aid an escape from liability thereon.

2. ———: **Landlord's Contingent Policy: Construction.** A "landlord's contingent policy" stipulated for indemnification against expenditures made by the owner of a building, in liquidation of claims for personal injuries sustained by reason of defects in the building or negligence of the owner, chargeable to him at law, provided he was not in the actual occupation or control of the building and that such actual occupation or control was vested in a lessee or lessees. The entire building was under lease to several tenants, some occupying more space than others, but every part of the habitable portions of the building was let to and occupied by tenants. The cornice of the roof fell and injured pedestrians on the street, and the owner

196 M. A.]　　　　　　　　(1)

settled the claims growing out of such injuries. In an action on the policy, insurer defended on the theory that the actual occupation or control of the cornice was not vested in the lessees, but that it was occupied and controlled by insured, so that the condition set forth in the policy, upon which the insurance was payable, did not obtain. *Held*, that this condition relates to the habitable portions of the building, and not merely to the roof or the cornice, and that insured did not "occupy" or "control" the roof or cornice within the meaning of the condition, and hence it is *held* that the policy afforded indemnification for the expenditures made in settlement of the claims.

3. **NEGLIGENCE: Res Ipsa Loquitur: Falling Cornice.** The fall of a cornice from the roof of a building, on a quiet evening, when the speed of the current of air did not exceed three miles per hour, injuring a person on the street, would alone lead to an inference of neglect of duty, under the *res ipsa loquitur* rule, which would suffice as a prima-facie showing of negligence and cast upon the defendant the burden of rebutting it.

4. **INSURANCE: Landlord's Contingent Policy: Prerequisite to Recovery: Defective Condition of Building.** In order to warrant a recovery under a "landlord's contingent policy," which stipulated for indemnification against expenditures made by the owner of a building, in liquidation of claims for personal injuries sustained by reason of defects in the building or negligence of the owner for which he was chargeable at law, provided, however, that he was not in the actual occupation or control of the building and that the actual occupation or control thereof was vested in a lessee or lessees, it was essential for insured to show that the defective condition of the building which caused the injuries existed at the time the tenants were given possession, since insured, as owner of the property, would not be "chargeable at law" for a defect that subsequently came into existence.

5. ——: ——: ——: ——: **Sufficiency of Evidence.** In an action on such a policy, evidence *held* sufficient to support a finding that the building was in a defective condition at the time the tenants took possession of it, and that such defect constituted negligence on the part of insured, as owner of the property, which was chargeable to him at law, so as to make insurer liable, under the policy, for expenditures made by insured in liquidation of claims for personal injuries sustained by reason of such defects.

6. ——: ——: ——: ——: **Change of Ownership.** Where, at the time such a policy was issued, the building covered thereby was owned by the heirs of an estate, who thereafter formed a corporation to which the property was conveyed, the heirs being given stock representing their proportionate interests in the estate, one of them being made president and another secretary and treasurer, etc., and the policy was changed so as to make the corporation the

assured, insurer was not relieved from liability for expenditures made by the corporation in liquidation of claims for personal injuries sustained by reason of defects in the building, negligently permitted to exist, on the theory that the building had been leased prior to the organization of the corporation and that it took title thereto subject to the leases, and, therefore, that it was not liable to the persons injured, since the organization of the corporation amounted to no more than encasing the estate in a corporate charter and neither in spirit nor in substance was there any charge of ownership. .

7. **CORPORATIONS: Holding Company: Rights and Liabilities.** Where the owners of property organize a corporation, to which the property is conveyed, and take stock therein, in proportion to their respective interests in the property, there is no change of ownership, either in spirit or substance, so that there is no change of rights or liabilities, with respect to the property.

8. **COMMON LAW: Operation.** The common law heeds the substance, rather than the shadow, of things.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

Affirmed.

*Holland, Rutledge & Lashly* for appellant.

*L. L. Leonard, R. H. Norton* and *Grover C. Sibley* for respondent.

. (1) The evidence conclusively showed that respondent was not in "actual occupation" of any part of the premises, and hence there was no violation of the conditions of the rider. 3 Joyce on Insurance, p. 2213; Craig v. Sp'g. F. & M. Ins. Co., 34 Mo. App. 484. (2) "Control" (or "occupation") of the roof and walls of the building, when all habitable parts were leased, and was not "control" (or "occupation") "of the property," within a fair interpretation of the rider and policy. Still v. Conn. F. Ins. Co., 172 S. W. 626; Herman v. Adriatic Co., 85 N. Y. 162; Harrington v. Fitch Mutual, 124 Mass. 126; Carter v. Humboldt Co., 17 Iowa 456. (3) Counsel errs in arguing that "if respondent were not in possession (occupation?) and control of any portion of the premises

at the time the cornice in question fell, respondent would
not be liable to the injured parties for the fall thereof."
By the contract of Sept. 13, 1910, appellant is estopped
from making this contention. Furthermore, a lessor is
liable in law for damages from an existing nuisance
and for this reason respondent was liable for these
damages due to his neglect and chargeable to him by law.
Felhauer v. St. Louis, 178 Mo. 646; Mitchell v. Brady,
124 Ky. 411; Glenn v. Hill, 210 Mo. 298; Stoetzels v.
Swearingen, 90 Mo. App. 593; Kaiser v. Washburn, 55
App. Div. 161. (4) The fact that the DeMun estate
was incorporated in the latter part of 1909 is of no im-
portance whatever. The same interests remained, rep-
resented by the same agents and under the same manage-
ment. Wrapping about an individual a corporate charter
does not change the identity of the individual. Brad-
shaw v. Halpin, 180 Mo. 666. (5) Occupation and control
of the roof of a building by the owner is not in violation
of a policy issued "with the understanding that the
assured is the owner of the property but is not in occupa-
tion or control of it," i. e., of the property. If in any-
wise possible, the policy will be construed so as to effectu-
ate the insurance. La Farce v. Ins. Co., 43 Mo. App. 519;
Carr v. Hibernia Ins. Co., 2 Mo. App. 466; Reun v.
Supreme Lodge, 83 Mo. App. 442; Sims v. State Ins.
Co., 47 Mo. 54; Alt. Est. v. Casualty Co., 149 S. W.
(Mo.) 1049; Miller v. Mo. Ins. Co., 153 S. W. 1080 (Mo.
1913); Harrington v. Fitchburg Ins. Co., 124 Mass. 126.
(6) The falling of a part of a building overhanging a
public thoroughfare is prima-facie negligence on the
part of those responsible in law for its safe maintenance.
Tiffany, Landlord & Tenant, pp. 692, 693; Muellen v.
St. John, 57 N. Y. 567; Railroad v. Hopkins, 54 Ark.
213; McNulty v. Ludwig, 125 App. Div. 292; Israel v.
Unit. Rys. Co., 155 S. W. (Mo.) 1092; McAdam v.
Street Ry., 174 Mo. App. 5; Blounts v. Dodd, 109 Mo.
69-74; Mitchell v. Brady, 124 Ky. 416. (7) The terms
of the contract of insurance are strictly construed against
the insurer. Walton v. Phoenix Ins. Co., 162 Mo. App.
316; La Farce v. Williams Ins. Co., 43 Mo. App. 530;

Starke v. Insurance Co., 176 Mo. App. 581; Mitchell v. Accident Ins. Co., 179 Mo. App. 5; Renn v. Ins. Co., 83 Mo. App. 449.

NORTONI, J.—This is a suit on a policy of insurance. Plaintiff recovered and defendant prosecutes the appeal.

The insurance contract is what is known as a landlord's contingent policy. It vouchsafes indemnity to the owner of the building, who is neither in the occupation nor control of it, for such expenditures as he may make in liquidation of claims arising on account of personal injuries received because of defects in the building or the neglect of the owner which are chargeable to him at law. The building on which the policy covers is situate on the west side of North Sixth street in St. Louis, between Olive and Pine, numbered 207, 209, 211, 213, and 215. It consists of three stories, is constructed of brick, and is known as the Mona hotel. It is an old building, having been erected about 1843, and was occupied first by DeMun as a residence. About 1855, it was converted into business property, but during all the time has continued as the property of the DeMun estate—that is, it was owned by the heirs of Isabel DeMun. The policy was originally issued to Julius S. Walsh, agent for himself and the other heirs, on the 20th day of December, 1909, for one year—that is, to December 20, 1910. In the meantime, the interests of all of the heirs in the property were incorporated in the name of DeMun Estate Corporation, the plaintiff, and on January 28, 1910 the change of the name of the owner was indorsed on the policy as follows:

"It is hereby understood and agreed that the name of the assured in this policy is changed to read DeMun Estate Corporation, and ceasing to cover in the name of Julius S. Walsh, agent for himself and other owners as originally written."

At the time the policy was issued, and, indeed, at all times relevant to the questions for consideration here, the building was in possession of tenants. William J.

Milford was the lessee under a lease of date June 29, 1908, for a period of four years of all of the second and third floors of the building and also the storerooms numbered 207, 209 North Sixth street—that is, on the ground floor, in which Milford conducted a hotel, the Mona House, and restaurant. Moreover, it appears Milford had possession of a small basement under the building as well. Joseph Fireside & Company were the lessees under a lease of date August 12, 1907, for a period of five years, of storerooms numbered 211, 213 North Sixth street, on the ground floor, while one Joyce was a tenant and occupied the remaining storeroom—that is, number 215 North Sixth street—as a dramshop. With the property thus occupied, the policy was issued to the heirs of the DeMun estate, Julius S. Walsh, agent, and continued in force under the change of name after the incorporation of the estate as above indicated.

On a quiet evening in June, 1910, a considerable portion of the cornice on the front of the building fell from position into the street and injured several pedestrians. Plaintiff expended about $3700 in settlement of the claims of persons so injured, preferred against it, and sues upon the policy for indemnity.

It is argued the subject-matter in suit is not within the terms of the policy, for that plaintiff owner was in possession and control of the roof of the building and the cornice which fell, whereas the policy stipulates indemnity only in those cases where the insured is not in such possession and control. The question thus made is to be determined by a construction of the following provision of the policy:

"This policy is issued with the understanding that the assured is the owner of the property but is not in occupation or control of it, the actual occupation or control being vested in a lessee or lessees, and it is hereby agreed that the company shall not be responsible for any loss, excepting such as may be occasioned by some fault or neglect on the part of the assured, or may be chargeable to him by law, notwithstanding the fact

that the property is leased or beyond his control, and this policy is accepted by the assured accordingly.''

We regard the argument as more specious than sound, in that it reckons with the words ''occupation or control,'' contained in the policy apart from the entire property as tenements, and seeks to confine them to a mere infinitesimal portion of the subject-matter insured —that is, to the roof, or, rather, the cornice which fell to the ground and injured the several pedestrians. Moreover, the argument proceeds in the view that the word ''occupation'' is synonymous with the word ''possession,'' which is in no wise true, and as if possession intends, in part at least, a constructive possession which draws to it the right of control touching the cornice. It appears that every part of the building—that is the habitable portions—was let to and occupied by tenants at the time the policy was issued and throughout the whole period involved here. This being true, no portion of it was in the ''occupation or control'' of the owner according to the intendment of the policy contract, when interpreted under the principle of law relevant to insurance matters. No one can doubt that the language employed in an insurance policy is to be construed in aid of the insurance rather than to the end of defeating it, for, indeed, the insurance vouchsafed is the very object and purpose of the contract. [See Stix v. Travelers' Indemnity Co., 175 Mo. App. 171, 177, 157 S. W. 870.] Moreover, the policy is to be given effect, if permissible, as if it was intended to cover and include the subject of the insurance for which the premium was paid, rather than to aid an escape from liability thereon. [See Still v. Connecticut Fire Ins. Co., 185 Mo. App. 550, 172 S. W. 625.]

The provision above copied proceeds, ''This policy is issued with the understanding that the insured is the owner of the *property,* but is not in occupation or control of *it,* the actual occupation or control being vested in a lessee or lessees.'' (The italics are our own.) In so far as these words are concerned, they relate to the *property* and not merely to the roof or the cornice. It is certain that this *property,* considered as the subject-matter insured, was not in the occupation or control of

the owner, for it was under lease and occupied by the several tenants, and, indeed, the leases stipulate that it was given over to the lessees in its present condition without any obligation on the landlord to make repairs for their benefit. Obviously, plaintiff owner did not occupy the roof of the building nor the cornice, and it cannot be said in the sense of the policy that it even controlled them. Whether Milford, who occupied two of the storerooms on the ground floor as a restaurant, and the second and third stories of the building as a hotel, is to be regarded as in the occupation and control of the roof and cornice as appurtenances to his tenement, is immaterial under this policy, for it is clear plaintiff was neither in the occupation nor the control of the *property*, that is, the habitable portions of it, which as a whole is the subject of the insurance. The concluding words of the provision of the policy above copied—that is, the words "notwithstanding the fact that the *property* is leased or beyond his (the owner's) control"—imply too, that the stipulation relates to the property as property for the uses intended, rather than to a mere isolated portion, such as the roof or the cornice, which in no sense is either occupied or controlled at all for the uses of either the tenant or the landlord. In this view, the subject-matter in suit—i. e., the payments made to the injured persons—is clearly within the terms of the policy, and it is unnecessary to consider the argument directed against the instruction touching the question as to the occupation or control, for the court should have directed as a matter of law that plaintiff was not in the occupation or control of the cornice which fell, in that all the habitable portions of the property were in the occupation and control of the tenants.

But it is argued that though such be true, it does not sufficiently appear that the damages liquidated by plaintiff were occasioned by some fault or neglect on the part of the assured or that they are chargeable to it by law according to the purport of the provision of the policy above set forth. There is no question about the fact that the cornice, because of its own defects, fell into the public street on a quiet evening, when it is

said the current of air did not exceed three miles per hour. It is conceded, too, that all of the parties to whom the payments were made received injuries from the fall of the cornice, without fault on their part, while passing the way. Ordinarily, the presumption of negligence which attends such a state of facts would alone suffice, in that the rule *res ipsa loquitur* applies (see McNulty v. Ludwig, 125 App. Div. (N. Y.) 291, 292) ; for, as said by the court in Mullen v. St. John, 57 N. Y. 567, 571, it is similar to the case of a ship thought to be seaworthy which goes to the bottom in a tranquil sea and without a collision. The mind, in such circumstances, necessarily seeks for a cause of the occurrence. Apparently it is the defective condition of the structure. This, of course, leads to the inference of neglect of duty, which suffices as a prima-facie showing and casts the burden to rebut it on defendant.

But the presumption is to be put aside here, for that, to cast liability at law upon the owner of the property, there must be some showing that the building was defective at the time possession was given over to the tenants under the leases, and it appears the leases were made about three years before. It appears that the cornice which fell was placed on this old building about twenty-five years before the occurrence. It was constructed by means of placing two-by-four pine timbers in the brickwork of the walls above the roof, and these were covered with a metal sheet. The whole was made fast by means of certain iron braces. In the course of all these years, the elements had caused this metal sheeting, which constituted the outside and covering of the cornice to disintegrate, and thus permitted the rain and snow to reach the wooden supports and iron braces within. The two-by-four pine pieces had decayed and the iron bolts rusted, until they broke. The mortar between the brickwork, to which the whole was affixed, had, through thus being exposed to the elements, lost its bond, until it had disintegrated into a mere sandy substance without resisting power. Expert evidence, given by experienced builders and men engaged in the business of wrecking buildings, tended to prove that this

condition was of long standing, and it sufficiently appears that it was discoverable by ordinary care for a period of several years before—at least antedating the leases in question. This evidence is abundant, as tending to prove that this old, dilapidated and weatherworn cornice, thus overhanging a sidewalk on a public street, was a nuisance, for injuries from which the owner of the property was liable, even at the time the property was let to the tenants. The finding to the effect that the injuries received by the pedestrians in the street were caused by some fault or neglect on the part of the insured and that they were properly chargeable to it by law is amply supported by the evidence. The question concerning this matter was sufficiently submitted to the jury by plaintiff's instruction No. 3 and defendant's instruction No. 7.

But it is argued plaintiff DeMun Estate Corporation, the insured under the policy as it now stands, is in no view liable at law to the persons injured in the street by the falling of the cornice, for that the property was under lease at the time it acquired it. The leases were made by the DeMun heirs through Julius S. Walsh, agent, one in 1907 and the other in 1908, and plaintiff DeMun Estate Corporation came into being subsequent thereto—that is, late in the year 1909. This argument proceeds in the view that, though the evidence sufficiently shows fault and neglect on the part of the DeMun heirs, even prior to the date of the leases, such fault and neglect may not be attributed to plaintiff DeMun Estate Corporation, which, it is said, succeeded to the property subject to the leases. We put aside entirely the argument, that he who knowingly continues a nuisance is responsible, as well as his predecessor, for permitting it in the first instance, as of doubtful import here, because, in no view, may liability be cast secondarily against defendant insurance company, unless the cornice was defective at the time the leases were executed and the property passed into the hands of the tenants, for that the owner of the property is not to be held for a dereliction of duty thereafter. Be this as it may, however, it is abundantly clear that plaintiff DeMun Estate Corpora-

tion is, both in spirit and substance, a mere continuation of the prior owner—that is, the several heirs of the DeMun estate. The property was owned by the heirs of Isabel DeMun and the leases were made by them through their agent, Julius S. Walsh, for himself and the other owners. In the latter part of the year 1909 the estate was incorporated and the property turned over to it as capital, while shares of stock were issued to each heir representing his proportionate part of the property. One of the heirs was president, another secretary and treasurer, etc., of the corporation, and it amounts to no more than encasing the estate in a corporate charter, for, as said before, in both spirit and substance the assured and lessor remained the same. In other words, the name of the assured and owner was merely changed and, indeed, such is recognized as the fact by defendant in the indorsement on the policy to that effect. By the express words of this indorsement it is recited of date January 28, 1910 that "the name of the assured in this policy is changed to read DeMun Estate Corporation." Obviously, though a corporate charter was obtained, and as incident thereto a franchise for the property interests of the several heirs to continue and subsist as a corporate entity rather than as individual private rights, the interests of the heirs remained the same throughout, in that the DeMun Estate Corporation represented the same rights of property as did the lessors, the heirs of the DeMun estate at the time the leases were executed. It is a benign precept that the common law heeds the substance rather than the mere shadow of things. In such circumstances, the plainest principles of natural justice require that the corporation be regarded as a mere change of name of the owner. In other words, as is well said in the brief, it is similar to the case of an owner going into court after the lease is executed and before the loss and having his name changed by decree, or a *femme sole* owner and lessor taking a different name as the name of her husband through marriage. In either event the owner, lessor and assured remain the same person. The principle declared in Winkleman v. Des

Moines & Mississippi Levee Dist., 171 Mo. App. 49, 153 S. W. 539, and more recently vindicated in Wilson v. Drainage District, 257 Mo. 266, 165 S. W. 734, s. c. 176 Mo. App. 470, 158 S. W. 931, is reflected and finds appropriate application here.

We see nothing further in the case that merits discussion in the opinion. All of the arguments advanced for a reversal of the judgment have been duly considered but we regard them as insubstantial.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.