**MARINE INS. CO., Limited, v. McLANAHAN et al., and three other cases.**

(Circuit Court of Appeals, Fourth Circuit. May 26, 1923.)

Nos. 2071–2074.

**1. Insurance ⬥147(3)—Marine policies issued by foreign corporations covering loss in American waters construed according to laws of the United States.**

Where marine insurance policies issued by English insurance companies limited liability to loss arising while the vessel was in the territorial waters of the United States or waters adjacent thereto, and provided for payment of the policies to an American trust company as its interest might appear, in an American city, the policy must be construed by the laws of the United States, and not by the laws of Great Britain, and the fact that the premium was paid in pounds sterling in London does not make the policy a British policy.

**2. Insurance ⬥149—Written clauses inserted in old forms control.**

Where new terms were inserted in writing in old printed forms of policies, effect must be given thereto, even if to do so requires a rejection of uncanceled provisions of the original forms.

**3. Insurance ⬥146(3)—Policies are liberally construed in favor of insured.**

Since policies of insurance are written by the insurer and delivered to the owner whose acceptance makes the contract, such contract should have a liberal construction in favor of insured whenever there is any doubt or

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ambiguity therein under the doctrine that contracts must be construed most strongly against those who make them.

**4. Payment** ⚎12(5)—**Policies covering loss of American vessel in American waters held payable in dollars.**

Insurance policies written by British companies on an American vessel, covering loss while the vessel was in American waters, and stating the valuation of the vessel in dollars, in which had been inserted a clause stating that the rate of exchange was to be $4.75 to the pound, require the insurers to pay the loss in American dollars, and do not entitle them to pay in pounds at a time when the value of the pound in American money was less than the rate of exchange stated.

Appeals from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Four separate libels in admiralty by J. Craig McLanahan, ancillary receiver of the West India Sugar Corporation, and another, against the Marine Insurance Company, Limited, against the Indemnity Mutual Marine Assurance Company, Limited, against the Century Insurance Company, Limited, and against the Employers' Liability Assurance Corporation, Limited. Decrees for libelants in each case (283 Fed. 240), and respondents appeal. Affirmed.

George W. P. Whip, of Baltimore, Md. (Lord & Whip, of Baltimore, Md., and Burlingham, Veeder, Masten & Fearey and Barker, Donahue, Anderson & Wylie, all of New York City, on the brief), for appellants Marine Ins. Co., Limited, Indemnity Mut. Marine Assur. Co., Limited, and Century Ins. Co., Limited.

Frank B. Ober, of Baltimore, Md. (Bigham, Englar & Jones, of New York City, Janney, Stuart & Ober, of Baltimore, Md., and George S. Brengle, of New York City, on the brief), for appellant Employers' Liability Assur. Corporation, Limited.

J. Craig McLanahan, of Baltimore, Md. (France, McLanahan & Rouzer, of Baltimore, Md., on the brief), for appellees.

Before WOODS and WADDILL, Circuit Judges, and McCLINTIC, District Judge.

McCLINTIC, District Judge. These were libels filed by the receiver of the West India Sugar Corporation against the four defendant insurance companies (all British companies and domiciled in England) to recover for the total loss of the barge Detroit, insured under four separate policies, all bearing date in the last half of the month of September, 1918, and issued in England. Under the terms of all the policies, the barge was insured "for and during the space of 12 calendar months commencing noon 25th of July, 1918, and ending noon 25th of July, 1919, beginning and ending with New York time." Each of the policies also contained certain clauses, interlined on the printed form either by typewriter or pen, as follows:

"Hull, materials, etc., valued at $100,000." "All claims hereunder to be settled at $4.75 to the £." "Warranted trading not north of Eastport, Maine, nor south of the river Plate, including the Gulf of Mexico and West Indies." "Loss, if any, payable to the Fidelity Trust Company, Baltimore, Maryland, trustee."

⚎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Likewise on the margins of the policies, there appeared the amount of the policy in pounds and dollars. These policies were preceded by a cover policy, issued by a broker in London to a broker in New York, which in the margin set out the names of the companies, including one not here libeled, and the amount that each one should assume, the total being "£3,750 or $17,812," also the following: "Ex. $4.75 to £." The premiums were 15 per cent. and were paid in pounds at the rate of exchange of $4.77 to the pound sterling. The original policies remained in the possession of the London broker.

On the 27th day of April, 1919, the barge Detroit was sunk as the result of a collision in the South Pass of the Mississippi river and became a total loss. Later these facts and the fact of the liability were admitted by the underwriters, and they severally paid to the London broker the amount of the policies in pounds, and this broker attempted to pay to the owner, this number of pounds at the rate of $3.37 to the pound sterling. The owner refused to accept this proffer of payment and filed the libels against the underwriters for the amount of each policy, at the rate of exchange of $4.75 for each pound sterling as set out in the respective policies.

In each case judgment was rendered in the District Court for the owner against the underwriter and these appeals were taken therefrom, and all the cases were here submitted as one. Under this state of facts, the question here to be decided is, was the owner to be indemnified under these policies, in the case of a total loss in *dollars,* or was he to be indemnified in *pounds sterling?* In other words, are these policies, *dollar* policies, or are they *pound* policies?

Are these policies to be construed under the laws of Great Britain, or under the laws of the United States? The policies show plainly that the subject-matter insured was valued in dollars, that it was American property, that its trading space was limited to waters adjacent to the United States, that the hour of the attachment and the ending of the risk, was to be calculated according to New York time, and that payment in the case of a loss thereunder, was to be made to an American Trust Company, in an American city. It is admitted that, owing to the fluctuations of exchange, most all policies issued by British companies on American vessels and cargoes in American waters since October, 1920, have been in plain terms, dollar policies.

Until some time after the outbreak of the World War, marine policies issued by British underwriters were pound policies and nothing else; that is to say, they promised, in the event of loss, to pay in pounds sterling. Everybody was then satisfied with that undertaking. For many decades prior to 1914, there had been no more stable measure of value. When the loss occurred, the liability was ascertained in pounds, turned into the currency of the forum if suit had been brought upon the policies in a country other than Great Britain, as of whatever date the trial tribunal held the conversion should be made. Then the great catastrophe came, and the value of the pound to other peoples was one of the many things that changed this. American ship and cargo owners were no longer content with the promise to pay pounds. They wanted to know, if a loss happened, how many dollars pounds would mean to them, for there were many indications that dollars would

be worth more and pounds less than for more than a century had been the case.

In consequence of this attitude, the British marine underwriters began to insert in their policies on American property, a statement that all claims would be settled at so many dollars and cents to the pound, the ratio named apparently being that, or about that, of the rate of exchange prevailing at the time the policy was written, and the premium paid. In this case, the phrase was all claims "to be settled at $4.75 to the pound" or something of that import.

[1] In the contemplation of the parties to the policies therefore, it must have been foreseen that, if there was a loss, it would be a loss of an American vessel, either within the territorial waters of the United States (as actually happened) or in waters closely adjacent thereto. The loss would be one in dollars and would be payable to an American corporation, located in an American city. Under this state of facts, we hold that the terms of the policies must be construed by the laws of the United States and not by the laws of Great Britain, if they differ in any particular. Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104. The fact that the premium was paid in pounds in London does not make the policy a British policy. Liverpool & Great Western Steam Co. v. Phœnix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788.

[2] In these cases new terms were inserted in old forms of policies, and it is familiar law in the United States, that effect must be given to words inserted in the body of existing forms, even if to do so requires a rejection of uncancelled provisions of the original draft. 26 Cyc. 581.

[3] Policies of insurance are written by the underwriter and then delivered to the owner, and all the terms thereof are inserted by the underwriter therein, and when accepted by the owner, become the contract between them. Such contract should have a liberal construction in favor of the insured owner whenever there is any doubt or ambiguity therein. It is another example of the familiar doctrine that contracts must be construed most strongly against those who make them.

[4] The owner asked for something which might protect him against the fluctuations of exchange, and the underwriters gave him a document altered from the old form, and in which the alterations seemed to him to furnish what he sought, and which do, unless they be given a construction making them either meaningless or confining their operation to contingencies which, at the time, there is no reason to suppose any one had in mind. It is earnestly insisted that this court is bound by the decision of the English courts; that is, the Court of Appeal and the House of Lords in the case of Howard Houlder & Partners, Ltd., v. Union Marine Insurance Company, decided by the House of Lords on the 27th day of March, 1922.

This case arose on a policy issued in England on the cargo in an American vessel, which cargo was to be carried from one British port in or near the West Indies, to another British port, in Canada or Newfoundland. The only clause of this policy relative to the question of pounds or dollars was as follows: "Claims, if any, to pay at the rate

of $4.15 to £1 sterling." No other reference is made in the policy to dollars in any way. It was decided by a majority of the Court of Appeal, and by the House of Lords, that this was an English policy, and should be settled in pounds, regardless of the clause above referred to, and notwithstanding the fact that, when the day of settlement arrived, the pound was worth only $3.74.

It will be seen that there are many differences between this policy and the ones sued on herein, and we are of opinion that such decision should not control us here. Having reached the conclusion that the policies in these cases are in all essentials to be governed by American law, and not by the laws of Great Britain and that the underwriters are liable for the full amount of each policy in dollars as set out therein, the decrees rendered below are therefore affirmed.