ROSEN-REICHARDT BROKERAGE COMPANY, a Corporation, Respondent, v. LONDON ASSURANCE CORPORATION, a Corporation, Appellant.*

St. Louis Court of Appeals. Opinion Filed June 6, 1924.

1. **INSURANCE: Marine Insurance: Policy: Free of Particular Average: Against Total Loss Only.** Where a contract of marine insurance is free of particular average, it is against total loss only, and does not permit a recovery for any partial damage or loss to the thing insured.

2. ———: ———: ———: **Exceptions or Exemptions: Must be Expressed in Clear Unmistakable Language.** If a marine insurance company desired to limit or restrict the operation of the comprehensive general provisions of its contract by a special proviso, exception or exemption, it should have expressed such limitation in clear, and unmistakable language.

Rosen-Reichardt Brokerage Co. v. Assurance Corp.

3. ———: ———: ———: **Restrictive Provisions: Strictly Construed in Favor of Insured.** Restrictive provisions in marine insurance policies are always construed strictly against the insurer, and, if open to two constructions, the one most favorable to the insured is adopted.

4. ———: ———: **Deterioration of Commodity: Defined.** Deterioration of a commodity, as ordinarily understood, is a constitutional hurt or impairment, involving some degeneration in the substance of the thing; such, for example, as that arising from decay, corrosion, or disintegration.

5. ———: ———: **Soiling of Commodity with Sea Water or Other Foreign Substance: Not Deterioration.** The mere soiling of a commodity with sea water or other foreign substance, resulting in a purely superficial hurt or impairment removable by the simple process of cleansing, cannot be said to be deterioration of the commodity within the ordinary and generally accepted meaning of that term.

6. ———: ———: **Damage: Deterioration: Not Used Synonymously in Marine Policy.** In a marine insurance policy, the use of the word "damage" in a clause "when the said damage occurs through fire" does not necessarily show that the word "deterioration" used in a preceding clause, was used synonymously with "damage," for to say that a deterioration of a commodity is a damage to it is not to say that a damage to a commodity is necessarily a deterioration of it, or that there may not be damage without deterioration.

7. ———: ———: **Policy: Construction: Insurer Not Exempt from Liability for Damages or Losses Suffered by Soiling by Sea Water Other Foreign Substance.** A clause in a marine insurance policy stating that the insurer does not guarantee against material deterioration, nor leakage, except when the damage occurs through fire, or the steamer is sunken or wrecked, or when following a leak, a stranding, or collision, the steamer has been obliged to put into port of call, and there discharge at least three-quarters of her cargo, qualified by a typewritten clause of the policy providing that the insurance is made and consented to subject to the conditions free of particular average, *held* effectual only to exempt the insurer from liability for partial damages and losses to the goods insured, arising from material deterioration, and not to exempt it from liability for damages or losses suffered by the soiling of the goods by sea water or other foreign substance.

8. ———: ———: **Interest: Allowance of Interest on Judgment on Marine Insurance Policy: Not Erroneous.** In an action on a marine insurance policy, where notice of damage or loss was given as required by the policy, and the agent of insurer made a survey

214 M. A.—43.

and inspection of the damaged goods which were on his recommendation recleaned at the expense of the insured, and where more than thirty days prior to the date from which interest was allowed the insurer's representative had full knowledge of all the facts and circumstances relative to the loss under the policy, and with such knowledge recommended the reconditioning of the goods, *held* that an allowance of interest from a date thirty days after the losses under the policy were payable to the insured, was not erroneous.

---

*Headnote 1. Marine Insurance, 26 Cyc, p. 670 (1926 Anno); 2. Marine Insurance, 26 Cyc, p. 666 (1926 Anno); 3. Marine Insurance, 26 Cyc, p. 666 (1926 Anno); 4. Marine Insurance, 26 Cyc, p. 668 (1926 Anno); 5. Marine Insurance, 26 Cyc, p. 668 (1926 Anno); 6. Marine Insurance, 26 Cyc, p. 668 (1926 Anno); 7. Marine Insurance, 26 Cyc, p. 668 (1926 Anno); 8. Marine Insurance, 26 Cyc, p. 740.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Robert W. Hall,* Judge.

AFFIRMED.

*Brownrigg, Mason & Altman* and *Bigham, Englar & Jones* for appellant.

*T. Catesby Jones,* of counsel.

(1) It is conceded by the defendant that if the damage to these raisins were due to a risk covered by the policy, then the expense incident to reconditioning them was an item of loss recoverable from the underwriter. (2) This loss was not covered by the policy because, although the damage was due to a peril of the sea the insurance was subject to free of particular average conditions. Where insurance is free of particular average it is thoroughly well understood as a proposition in maritime insurance that the insurance is against total loss only and does not permit a recovery of any partial loss or damage to the thing insured. Thames & Mersey Ins. Co. v. Pacific Creosoting Co., 223 Fed. 561; Washburn etc. Co. v. Reliable Marine Ins. Co., 179 U. S. 1; London Assurance v. Companhia de Moagens Do Bar-

reiro, 167 U. S. 149; Great Western Ins. Co. v. Fogarty, 86 U. S. 64. (3) Plaintiff claimed, and the court allowed, interest from December 8, 1920. Even if anything were due under the policy, there was no basis for allowing interest, because there was no evidence as to when the damage became payable under the terms of Article 14 of the policy, that is, no evidence as to when the amount of the damage was ascertained and communicated to the defendant.

*Arthur E. Haid* for respondent.

(1) It is a familiar rule of construction of contracts, and especially of insurance contracts, that the most favorable construction is to be given to the policy in favor of the assured. Rosenbach v. National Fidelity & Cas. Co., 221 S. W. 386; Mathews v. Modern Woodmen, 236 Mo. 342, 139 S. W. 151; Stark v. John Hancock Mut. Life Ins. Co., 159 S. W. 758; Le Maitre v. National Casualty Co., 186 S. W. 964; Marine Ins. Co. v. McLanahan, 290 Fed. 685; Thompson v. Phoenix Ins. Co., 136 U. S. 287, 34 L. Ed. 408; London Assurance v. Companhia etc., 167 U. S. 149, 42 L. Ed. 113. (2) Where a policy of insurance is susceptible of two interpretations equally reasonable, that construction most favorable to the assured must be adopted, even though intended otherwise by the insurer. Howell v. Security Mut. Life. Ins. Co., 253 S. W. 411; Marine Ins. Co. v. McLanahan, 290 Fed. 685; Parker Russell M. & M. Co. v. Insurance Co., 240 S. W. 248; Thompson v. Phoenix Ins. Co., 136 U. S. 287, 34 L. Ed. 408; First Nat. Bank v. Hartford Fire Ins. Co., 95 U. S. 673, 24 L. Ed. 563; London Assurance v. Companhia etc., 167 U. S. 149, 42 L. Ed. 113. (3) The law does not favor forfeitures, and contracts of insurance must be so construed, if possible, as not to defeat the claim to indemnity. Howell v. Security Mut. Life Ins. Co., 253 S. W. 411. (4) The provisions in a policy, limiting or avoiding liability, must be construed most strongly against the insurer. Howell v. Security Mut. Life Ins. Co., 253 S. W. 411; Thames & Mersey M. Ins. Co. v.

Pacific Creosoting Co., 223 Fed. 567. (5) A parenthetical clause is an explanatory or qualifying clause, and is used to limit, qualify or restrict the meaning of the sentence with which it is connected. In re Schilling, 53 Fed. 81; 6 Words and Phrases, p. 5174; 29 Cyc. p. 1682.

SUTTON, C.—This is an action upon a policy of marine insurance issued at Patras, Greece, on June 23, 1920. By the policy defendant insured plaintiff in the sum of 9210 pounds sterling on 3000 cases of cleaned, dried currants, laden in the hold of steamship Burma, for the voyage from Patras, Greece, to St. Louis, Missouri. Articles 1 and 10 of the general conditions of the policy are as follows:

"Art. 1. Are at the risk of the Assurer all damages and losses which occur to the things insured, through tempest, shipwreck, stranding, collision, forced bearings away, forced changes in the route, voyage and steamer, jettison, fire, explosion and generally all accidents and perils of the seas."

"Art. 10. With respect to the goods designated in the following table, the assurer does not guarantee against material deterioration nor leakage, even exceeding three-quarters, except:

"(a) When the said damage occurs through fire;

"(b) When the steamer has been sunken or wrecked;

"(c) When, following a leak, a stranding or a collision, the steamer has been obliged to put into a port of call and there discharge at least three-quarters of her cargo.

"Table of goods insured free of material deterioration under conditions of Art. 10."

Here follows a long list of commodities, but dried currants do not appear in the list.

There was typewritten on the first page of the policy into a blank space occurring in the printed portion of the policy the following clause:

"The present insurance is made and consented to subject to conditions: Free of particular average (Art. 10 of the general conditions of the policy)."

It was agreed below that by this clause the insurance covered by the policy was made subject to the provisions of Article 10 of the general conditions of the policy.

It was further agreed as follows:

That on or about the first day of August, while said steamship Burma was en route from Venice to New York with said shipment of dried currants, said steamship encountered a tempest, as is shown by the report or "protest" of the master of said steamship Burma, the material portion of which is as follows:

"She proceeded on her voyage with variable winds and weather until August first at 10 a. m. in the meridian of Bermuda and parallel 31' while en route from Venice and ports of call to New York with general cargo and green fruit, we find ourselves in the midst of a storm breaking unexpectedly out of southwest. The sea is mountainous and wind galish and getting worse. At 8 p. m. the weather assumes the aspect of a tempest, aided by the strong current of the Gulf of about thirty-six miles per hour. Heavy rolling and tossing, waves break over and wash decks, keeping them flooded. We keep hatches and ventilators tightly closed. Pumps are worked continuously. Water brought up is mixed with matter pertaining to cargo, and it is believed cargo has moved and been averaged."

That upon the arrival of said shipment of dried currants and delivery to the plaintiff at St. Louis, Missouri, it was found, on inspection, that 1000 cases of currants were damp and slightly soured, requiring immediate handling, and chemical tests of samples of the currants showed presence of salt indicating the cases were in contact with sea water.

That after said inspection the currants were recleaned and reconditioned at a cost of $3210.04, which is the damage sued for in this cause, and they were again marketable and suitable for human consumption and were disposed of by the plaintiff as such.

That the damage sued for was not caused by fire, or by the steamer being sunken or wrecked, or by the steamer being obliged to put into a port of call and discharge

cargo, following a leak, a stranding or a collision as specified in Article 10 of the General Conditions, but said damage was caused by a tempest, as shown by the report or protest of the master of the steamship, causing water to leak through the hatches and ventilators into the hold of the vessel and depositing salt and other foreign matter upon said dried currants and making it necessary to reclean or recondition said dried currants before being marketed.

The trial resulted in a judgment for plaintiff in the sum of $3659.44, and from this judgment the defendant appeals.

It is conceded by the defendant that if the damage to the currants insured was due to a risk covered by the policy, then the expense incident to reconditioning them is an item of loss recoverable under the policy. Defendant contends, however, that the loss was not covered by the policy, because, although the damage was due to a peril of the sea, the insurance was subject to free of particular average conditions. Defendant invokes the well-recognized rule, applicable to marine insurance contracts, that, where the insurance is free of particular average, it is against total loss only, and does not permit a recovery for any partial damage or loss to the thing insured. [London Assurance Corporation v. Companhia de Moagens Do Barreiro, 167 U. S. 149; Washburn, etc., Co. v. Reliable Marine Ins. Co., 179 U. S. 1; Thames & Mersey Ins. Co. v. Pacific Creosoting Co., 223 Fed. 561, 565; Great Western Ins. Co. v. Fogarty, 86 U. S. 640.]

Defendant urges that, since the insurance was made and consented to subject to conditions free of particular average (Article 10 of the general conditions of the policy), and since under the provisions of said Article 10 the insurer does not guarantee against material deterioration, except when caused through fire, or when the steamer has been sunken, or wrecked, or when following a leak, a stranding or a collision, the steamer has been obliged to put into a port of call and there discharge at least three-quarters of her cargo, and since the damage or loss sued for did not occur through fire, or when the

steamer had been sunken, or wrecked, or when following a leak, a stranding or a collision, the steamer had been obliged to put into a port of call and there discharge cargo, the loss comes within the exemption of the policy, and the plaintiff is not entitled to recover.

By Article 1 of the general conditions of the policy defendant contracted to insure the plaintiff against "all damages and losses which occur to the things insured through tempest . . . and generally all accidents and perils of the seas." There can be no question that the loss sued for is covered by these broad and comprehensive provisions of Article 1. If the company desired to limit or restrict the operation of these comprehensive general provisions of the contract, by a special proviso, exception, or exemption, it should have expressed such limitation in clear and unmistakable language. Such restrictive provisions are always construed strictly against the insurer, and, if open to two constructions, the one most favorable to the insured is adopted. [Mathews v. Modern Woodmen of America, 236 Mo. 326, 1. c. 342, 139 S. W. 151; Thames & Mersey Ins. Co. v. Pacific Creosoting Co., 223 Fed. 561, 1. c. 567; Marine Ins. Co. v. McLanahan, 290 Fed. 685, 1. c. 688; Thompson v. Phenix Ins. Co., 136 U. S. 287, 1. c. 297; National Bank v. Insurance Co., 95 U. S. 673, 1. c. 679; London Assurance Corporation v. Companhia de Moagens Do Barreiro, 167 U. S. 149, 1. c. 159; Rosenbach v. National Fidelity & Casualty Co., 204 Mo. App. 145, 221 S. W. 386; Stark v. John Hancock Mutual Life Ins. Co., (Mo. App.) 159 S. W. 758; Lemaitre v. National Casualty Co., 195 Mo. App. 599, 186 S. W. 964.]

Defendant relies upon Article 10, as qualified by the typewritten clause above referred to, to exempt it from the liability imposed by the provisions of Article 1. Article 10 exempts the defendant from liability for any partial damage or loss arising from material deterioration with respect to the goods designated in the table set out in the article. Dried currants are not designated in this table, so that Article 10 does not of itself exempt the defendant from liability. It can do so, if at all, only

because of the effect of said typewritten clause of the policy, to-wit:

"The present insurance is made and consented to subject to conditions: Free of particular average (Article 10 of the general conditions of the policy)."

There is much discussion in the briefs of counsel concerning the effect of this clause. We have no hesitancy, however, in adopting the view of plaintiff's counsel, that the clause, amplified according to its manifest meaning, would read as follows:

"The present insurance is made and consented to subject to the following conditions: Free of particular average as specified in Article 10 of the general conditions of the policy."

Moreover, it was agreed by the parties below, "that the insurance covered by the policy was made subject to the provisions of Article 10 of the general conditions," by said typewritten clause.

So that obviously the only effect of this clause was to import dried currants into the table of goods set out in Article 10, and the only matter for determination here is the effect of the provisions of Article 10, construed as though dried currants were designated in the table of goods set out in the article.

Defendant contends that material deterioration as used in Article 10 is to be taken in the broad sense of damage or loss; whereas, plaintiff contends that material deterioration has a meaning much narrower in its scope than damage or loss, that though there was a damage or loss resulting to the currants from the tempest, or other peril of the seas, there was no deterioration of the currants within the true meaning of that term. We are inclined to, and do, adopt the plaintiff's view. Deterioration of a commodity as ordinarily understood is a constitutional hurt or impairment, involving some degeneration in the substance of the thing, such, for example, as that arising from decay, corrosion, or disintegration. The mere soiling of the commodity with sea water or other foreign substance resulting in a purely superficial hurt or impairment removable by the simple process of

cleansing, cannot be said to be a deterioration of the commodity within the ordinary and generally accepted meaning of that term. The defendant in fixing its general liability by the provisions of Article 1, did so in the broad and comprehensive terms of "damages and losses." If it desired to make its exemption from partial damage or loss on certain designated goods under certain designated conditions, as broad as its liability as fixed by the provisions of Article 1, it could easily have done so by the employment of appropriate language. The policy itself demonstrates that the defendant knew how to exempt itself from "damages and losses" when it wanted to do so; for, by Article 2 of the general conditions of the policy, it provided that it was not liable for "damages and losses" occurring through civil or foreign war, hostilities, reprimands, arrests, captures, molestations of governments, riots, insurrections, popular movements, boycottings, political attempts and strikes, and all other like doings; by Article 3 it provided that it was exempt from all "damages and losses" arising through *vice propre* of the thing, from damages caused by rain, by the influence of the temperature, steam of hold, insects, mice and rats, theft, captures, confiscations and events whatsoever arising from contraband, or prohibited or clandestine commerce, acts, criminal, felonious or fraudulent of the captain, and of the crew, known under the name of barratry of the master; and by Article 4 it provided that it was not liable for "damages and losses" to the things insured, if through the management of the insured or of its representatives they were retained in one place longer than would have been the case if such management had not intervened.

Defendant's counsel urge in argument that the use of the word "damage" in the clause, "when the said damage occurs through fire," shows that the word "deterioration" used in the preceding clause, was used as synonymous with "damage." To this we do not agree. To say that a deterioration of a commodity is a damage to it is not to say that a damage to a commodity is necessarily a deterioration of it, or that there may not be dam-

age without deterioration. The reference in the clause to "deterioration" as "damage," does not, therefore, mean that the two words are used as synonymous terms.

Obviously the provisions of Article 10, as qualified by the typewritten clause of the policy, were effectual only to exempt the defendant from liability for partial damages and losses to the currants insured, arising from material deterioration, and not to exempt it from liability for damages or losses suffered by the soiling of the currants by sea water or other foreign substance.

In its judgment the court allowed interest on the amount of the loss from December 8, 1920. Defendant objects that there was no basis for the allowance of interest because there was no evidence as to when the damage became payable under the terms of Article 14 of the policy. Article 14 provides that damages and losses for which defendant is liable are payable thirty days after complete presentation of justifying documents to the bearer of those documents and of the policy, without power of attorney being necessary. It was agreed by the parties below that notice of the damage or loss was given as required by the policy. It was also agreed that the agent of the defendant made a survey and inspection of the currants on November 5, 1920, and that it was upon his recommendation that the currants were recleaned and the expenses incident thereto incurred by the plaintiff. So that it appears that, more than thirty days prior to the date from which interest was allowed, the defendant's representative had full knowledge of all the facts and circumstances relating to plaintiff's loss, and with such knowledge recommended the reconditioning of the currants. In view of this, it is manifest that the point made by defendant concerning the allowance of interest is without merit.

The Commissioner, therefore, recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.