John Lee **VARBLE** and Beverly Ann Varble, minors, by and through their father and natural guardian, John Varble, Plaintiffs-Respondents,

v.

Harry **STANLEY**, Defendant, State Automobile Insurance Association, Garnishee-Appellant.

No. 7645.

Springfield Court of Appeals.

Missouri.

Oct. 29, 1957.

Orville C. Winchell, Lebanon, for gar-
nishee-appellant.

J. W. Grossenheider, Lebanon, for plain-
tiffs-respondents.

RUARK, Judge.

This is an appeal by the liability insurer-
garnishee from a judgment rendered in fa-
vor of the plaintiffs-garnishors, who previ-
ously had judgment against one Harry
Stanley. Said Harry was the seventeen-
year-old son of the named insured and was
the driver of the automobile involved in the
collision which gave rise to the damage suit.

Under the policy "Definition of Insured,"
omnibus liability protection was extended
to "any person while using the automobile

\* \* \* provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

Attached to the policy and made a part by reference (to "Form No. 5–60 Nebr., " following the listing of coverages on the declarations page) was a sheet entitled "PRIVATE PASSENGER AUTOMOBILE CLASSIFICATIONS (Rating Information—Bodily Injury, Property Damage, Collision)." Under this title heading appeared the statement, "The classification and rate assigned to the automobile on the basis of the Company's information when the policy is written is designated below by the letter 'X.' " Following this were seven blank squares, opposite each of which were one or more paragraphs describing the situation in regard to the use and operation of the automobile and the age and status of the operator thereof. Opposite the particular square which bore an "X" was the writing:

"Class 1a means

"1. use of the automobile is not required by or customarily involved in the occupational duties of any person except in going to and from the principal place of occupation a distance of less than ten road miles one way.

"2. there is no male operator of the automobile under 25 years of age resident in the named insured's household or employed as a chauffeur of the automobile.

"Note—Automobiles Owned by Clergymen—Provisions with respect to the use of the automobile in the occupational duties do not apply to the automobiles owned by clergymen."

The sheet so referred to was not a part of any application by the insured and is signed only by the printed signature of the garnishee insurer and followed by the signature of the secretary of the insurer's attorney in fact.

Our first question is whether the above writing limits and excludes coverage when the automobile is operated by any male operator under twenty-five years of age who is a resident of the named insured's household. Appellant so contends.

It is not contended that the insured misrepresented the status of affairs in her household. In fact, there is no evidence that the son *was* a member of the household when the policy was issued. Nor is there any evidence that the son had ever driven the automobile upon the roads or streets prior to the occasion of the collision which resulted in this suit. If we are able to interpret appellant's argument, it is that the words in themselves constitute a limitation, a continuing warranty, or an exclusion of liability. We think they do not.

The sheet on its face is shown to be the insurer's own classification made for the purpose of fixing rates, this classification being based upon the condition of affairs found and determined by the insurer at the time of issuance of the policy. It does *not* contain any provision that the liability is excluded if a male operator (or a female operator, for that matter) who is under a certain age shall drive the car. The fact that it mentions only a male operator who is a member of the household in itself indicates that it is aimed at describing and defining the situation of the parties and the character of the risk involved at the time the policy was issued, and that it is not aimed at excluding liability under all circumstances for operation by all persons under the age of twenty-five years.

Since there is no express provision which excludes liability, the appellant's position must depend upon the assumption that the statements made in the classification sheet *imply* a warranty or exclusion.

■■ All provisions of the policy must be given their plain and reasonable meaning, and all parts thereof must, if possible, be harmonized and given effect in order to

accomplish the intention of the parties.[1] But an insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it.[2] Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer.[3]

■ If the insurer intended to exclude or limit its liability in instances of operation by a male member of the household under twenty-five years of age, it could and should have said so in plain and explicit language.[4] And we will not adopt a construction which will imply such exclusion from language which would amount to the planting of a forfeiture in ambush.[5] We hold against appellant on this assignment.

Our next question arises on the appellant's contention that its motions to dismiss at close of evidence should have been sustained. This requires an examination of the evidence to determine whether there was a submissible case on the issue of whether there was a permissive use so as to bring the driver under the omnibus clause.

The collision occurred at approximately 6:30 p.m. of October 8, 1956. At that time Tillie Stanley, illiterate, had a husband, Leonard (illiterate), a son Harry (also illiterate), some other children, a 1956 Buick Special hardtop, and a liability policy. The family lived in a trailer at or beside or behind Wrink's Market in Lebanon, Missouri. Leonard, the father, painted roofs for a living. Harry, then age seventeen, helped his father in this work. The father had a truck which he used "to paint out of."

Sometime between 5:00 and 6:00 p.m., Harry took the Buick Special hardtop and drove out several miles from Lebanon to see a man about a painting job. He said he did this because he had worked in that vicinity some time previous, had talked to a woman about a painting job, and she had told him to come back and discuss it with her husband. It was while returning to Lebanon that Harry had the collision which led to this suit. A highway patrolman testified that he investigated the collision at the scene; that Harry had the keys to the Buick and told him that he had been out to see a man about a roofing job; that he had Harry drive the Buick back to the market and followed him; that when or after they arrived both parents were at the trailer and the trooper told the father about the accident and the father said, or told him, that the boy had been out in the country to see a man about a roofing job.

1. 44 C.J.S. Insurance § 296, p. 1163; 5A Am.Jur., Automobile Insurance, Sec. 3, p. 8; Soukop v. Employers' Liability Assurance Corp. of London, 341 Mo. 614, 108 S.W.2d 86, 112 A.L.R. 149; Lynch v. National Life & Acc. Ins. Co., Mo. App., 278 S.W.2d 32; State ex rel. Mutual Ben. Health & Acc. Ass'n v. Shain, 350 Mo. 422, 166 S.W.2d 484; Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088.

2. 44 C.J.S Insurance § 291, pp. 1151, 1152; Bonzon v. Metropolitan Life Ins. Co., Mo. App., 143 S.W.2d 336; Hoover v. National Casualty Co., 236 Mo.App. 1093, 162 S.W.2d 363; De Mun Estate Corp. v. Frankfort General Ins. Co., 196 Mo.App. 1, 187 S.W. 1124, 1126; Kimbrough v. National Protective Ins. Ass'n, 225 Mo. App. 913, 35 S.W.2d 654.

3. Freese v. St. Paul Mercury Indemnity Co., Mo.App., 252 S.W.2d 653; Boecker v. Aetna Casualty & Surety Co., Mo.App., 281 S.W.2d 561; Graham v. Gardner, Mo.App., 233 S.W.2d 797; Chamberlain v. Mutual Ben. Health & Acc. Ass'n, Mo.App., 260 S.W.2d 790; Bituminous Casualty Corp. v. Walsh & Wells, Inc., Mo.App., 170 S.W.2d 117, at page 121, and cases cited; Consolidated Elec. Co-op. v. Employers' Mutual Liability Ins. Co., D.C.E.D.Mo., 106 F.Supp. 322.

4. 45 C.J.S. Insurance § 585, p. 380; Kimbrough v. National Protective Ins. Ass'n, 225 Mo.App. 913, 35 S.W.2d 654, 658; Rosen-Reichardt Brokerage Co. v. London Assur. Corp., 214 Mo.App. 672, 264 S.W. 433, 435.

5. State ex rel. Mills Lumber Co. v. Trimble, 327 Mo. 899, 39 S.W.2d 355, 358.

Harry, for garnishee, testified that he took the car without permission from or knowledge of either of his parents. He said that he had never been authorized or permitted by either to drive the Buick upon the streets or roads but had been permitted to operate it to the extent of backing or moving the trailer forward, and in parking it on the trailer space; that the Buick had an automatic transmission and that he could "read the numbers" on it; that when he got the car there were no keys in it, but that he started the car—"Well, she has an automatic switch. If you don't put it on the lock you can just put her over and she will start up. If you turn it on 'lock' she won't." He said his father did not send him out to see about the job.

"Q. When is the first time you told your mother or your dad you had the car? A. Well, I didn't tell them until I pulled up in the place and they seen the car wrecked and I told my dad."

Tillie Stanley (the mother) testified for garnishee that she owned the Buick, which had an automatic switch, that "without it is locked you can use it"; that she never at any time gave Harry permission to drive the car and he had never driven it before that date except "if he had to move around the trailer for another car or truck; it was awful crowded"; that he had never driven it on the road. She said that on that evening Harry came in from work and washed his hands in the trailer and went outside, and that she did not see her son leave. "I were cooking supper with the curtains pulled and the children were looking at television." Her husband was out behind the trailer fixing a wooden doorstep. (Where the Buick was parked and whether the father was in its immediate vicinity at the time the son left the lot is not shown.) The first she knew her son was gone was when "I called for supper and he were gone." Leonard Stanley, the father, testified that he had never given Harry permission to drive the Buick on the road, did not on this occasion, and did not see Harry drive the car off; that he did not send the boy out to see about the job and the first he knew that Harry had the automobile was "when I seen the cars come in with the lights on and run out and seen the wreck and the trooper was with him."

This was all the testimony in reference to permission except some impeachment testimony which respondents concede in their argument was not competent for the purpose of proving such permission. The respondents, while conceding that there is no direct proof of permission, argue that the court properly submitted and the jury had a right to find such because an inference of permission could be drawn from the evidence.

■■■ There is no question that the permission provided in the omnibus clause can be either express or implied from the conduct of those in a position to give it.[6] But as a general rule the person claiming such permission must prove it,[7] and no implied permission can arise merely because someone obtained possession of the property and used it without the knowledge of the named insured. The inference of agency is somewhat akin to the question here, since the relationship of agency involves the element of consent. It can be inferred, but the law indulges no presumption that it exists, and if it is to be inferred it must be from a natural and reasonable and not a forced or strained or distorted construction of the

6. Hawkeye Casualty Co. v. Rose, 8 Cir., 181 F.2d 157; Stoll v. Hawkeye Cas. Co. of Des Moines, 8 Cir., 193 F.2d 255; Aetna Life Ins. Co. v. Chandler, 89 N.H. 95, 193 A. 233; see 5A Am.Jur., Automobile Insurance, sec. 94, p. 92; see Annotation 5 A.L.R.2d, Automobile Insurance, sec. 6, p. 608; Annotation 160 A.L.R., Automobile Insurance, p. 1202; Annotation 126 A.L.R., Automobile Insurance—"Omnibus" Clause, VI, p. 550.

7. See Annotation 72 A.L.R., Automobile Insurance—"Omnibus" Clause, VI, p. 1388.

facts.[8] It is true that in some jurisdictions there is a presumption that one who drives a car does so with permission of the owner. But such presumption, if it did exist in this state, would avail the plaintiffs nothing, because it drops out upon receipt of direct evidence to the contrary.[9]

■ Although a plaintiff may not rest his case upon a presumption, he may nevertheless establish it by inference.[10] But such inference must be drawn from substantial and probative evidence which is sufficient to lead to a conclusion as to a certain result which, according to the common experience of mankind, follows naturally and usually from the given state of facts and which at the same time logically and according to the common experience of mankind *excludes a different result or conclusion.*[11]

Plaintiffs argue that a legitimate inference of permission may be made from the following facts:

(a) According to the trooper, the boy had the car keys (whether in the switch or in his pocket is not shown). This involves (1) the *assumption* that the keys were given him by one of his parents instead of coming into his possession by stealth or other means; and (2) the assumption that the assumed delivery of the keys was to accomplish the driving of the car on the road (and not for some other purpose)—two inferences leap-frogging down one fork of a bifurcated road. We think bare possession of automobile keys, alone and of itself, is not a fact which would reasonably justify a conclusion that the possessor is authorized to drive the car, although it might be strong support for such when accompanied by other sufficient facts and circumstances.

(b) The patrolman testified that when (or after) they drove into the trailer lot, the boy leading and the patrolman following, the father said that the boy had been out to see a man about a roofing job. When did the father make this statement? Was it before, or after, the boy told, or had an opportunity to tell, his father where he had been? The record does not show. In any event, the best that it would show was a knowledge on the part of the father (whether acquired before or after) that the son was going (or had gone) to see about the job. *Assuming* that the father knew about the possibilities of the job and directed, or assented to, the son's going, can we infer that the son was to take the car rather than use some other means? (There is no evidence as to whether the boy was in the habit of driving the paint truck with the parents' consent.) If the evidence showed that the father was in the sight and vicinity of the car when the boy left with it, we would have a situation which might call for reasonable deduction that the father, at least impliedly, assented to the taking, but we have no right to infer it from the facts shown here.

(c) The boy had permission to drive or shift the car on the trailer lot. Plaintiffs make an unfair appropriation of this fact by lifting it from the testimony of garnishee's

---

8. E. B. Jones Motor Company v. Pullen, Mo.App., 298 S.W.2d 448; Wyler Watch Agency v. Hooker, Mo.App., 280 S.W.2d 849, at page 856 and cases cited; and see State ex rel. Massman v. Bland, 355 Mo. 17, 194 S.W.2d 42, in regard to inferring agency from possession of boards and a truck taken from defendant's farm.

9. See Appleman, Insurance Law and Practice, vol. 21, sec. 12274, p. 127, and cases there cited.

10. For distinction between presumption and inference, see State ex rel. Wallach v. Raeder, Mo.App., 196 S.W.2d 19; Jones v. Phillips Petroleum Co., Mo.App., 186 S.W.2d 868; Finks v. Viking Refrigerators, Inc., 235 Mo.App. 679, 147 S.W.2d 124.

11. For definitions and discussion of substantial evidence and inferences, see Hogue v. Wurdack, Mo.App., 298 S.W.2d 492; Davis v. State Department of Public Health and Welfare, Mo.App., 274 S.W.2d 615; Vietmeier v. Voss, Mo., 246 S.W.2d 785; Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817; Berry v. McDaniel, Mo.App., 269 S.W.2d 666.

**668**

witness out of context. A fair statement of the testimony of the parents is that the boy was not permitted to drive the car *except* in shifting or parking it upon the lot. The drawing of an inference that this gave permission to drive on the road is in contradiction of the sense of the whole statement. It is like seizing upon a statement, "I never go fishing except on the Gasconade," and saying, "Ha! He fishes; therefore we may reasonably assume that he was trolling for bass on the Lake of the Ozarks."

(d) Finally there is the contention that the fact the illiterate boy knew how to drive the car gives reason for inferring that he was authorized to drive it at the time and place here involved. Ignoring the evidence to the effect that Harry had been permitted to start, stop, back, and park the car on the trailer lot, and also ignoring the fact that the father used a truck in the business at which Harry helped, we are still of the opinion that the fact that a seventeen-year-old *knows how to drive* an automobile (new or old) is not evidence from which a fair or logical conclusion can be drawn that the parents authorized or permitted the driving of any one particular motor vehicle on any specific occasion. Seventeen-year-olds usually know how to drive the regular makes of motor vehicles, and we might suggest that they usually can drive better, although unfortunately not with as much judgment or care as their elders. They acquire this knowledge in many devious and mysterious ways, just as they acquire knowledge of the birds and bees. We cannot infer that simply because one of that age knows how to drive a car the parents gave him permission to drive it, any more than we can infer that because they know about the birds and bees the parents authorized and permitted them to engage in a project which indicates knowledge of that subject.

We are not able to take any of these facts, singly or in combination, and arrive at a conclusion which reasonably points to the fact in issue, i.e., that of permission to drive the car on this occasion, and which

just as reasonably excludes a logical conclusion to the contrary. True, it is possible and may be *speculated* that the son was permitted to drive the car on this occasion, but mere possibilities and speculation are not enough to make a submissible case. However, a retrial might explain or develop with certainty matters which in this record are left vague and indefinite. We are of the opinion that the judgment should be reversed and the case remanded. It is so ordered.

McDOWELL, P. J., and STONE, J., concur.