C. E. STILL, Respondent, v. THE CONNECTICUT FIRE INSURANCE CO., OF HARTFORD, CONNECTICUT, Appellant.

Kansas City Court of Appeals, January 11, 1915.

1. INSURANCE: Interpretation of Contract. A policy of insurance so written as to require interpretation of the meaning of its terms will be construed in favor of the insured.

2. INSURANCE: Interpretation of Contract. A policy of insurance is a contract drawn by the insurer, and when it is so drawn as to be open to two possible interpretations, that one will be adopted which is least favorable to the party drawing it.

3. ————: ————: Subject-Matter. The language of the policy should be construed, if practicable, so as to cover the subject-matter intended to be covered.

4. ————: ————. Insurance is a matter of contract, and the intention of the parties must determine the sense in which terms employed are used. If that sense is clearly expressed in the policy then the written terms are binding and conclusive. But if the policy does not clearly express the meaning to be attached to the terms used in describing the property insured, then resort may be had to the surrounding circumstances to determine the meaning.

5. ———: ———: ———. If the words employed of themselves, or in reference to the subject-matter to which they relate are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed in favor of the insured.

6. ———: ———: ———. An insurance agent solicited plaintiff to have his property insured. The plaintiff told the agent to go to his premises and insure everything. The agent did so and drew up a policy covering plaintiff's residence for a certain amount, $3500 on a "Shingle-roof frame barn building" and "$1000 on another shingle-roof frame barn." The "barn building" had a silo built in close proximity thereto and so joined to it as to be used only in connection with the barn, by one owner and for one common purpose. *Held*, that the silo and barn constituted one building within the meaning of the contract, and that a loss occurring largely on the silo part and only slightly to the barn portion was recoverable under the policy although the practice of the insurance company was not to insure silos; *Held*, further, that the parties to the contract treated the entire structure as one building.

7. ———: ———: ———: **What Constitutes One Building.** Whether or not a structure added to a building is to be considered a part of the whole building depends upon a number of things. If it is erected so close to the other structure as to be physically joined thereto, and is so arranged that the addition can only be used in connection with the main structure, and the two are devoted to one general common purpose, and are occupied and used by one owner, then the whole can be treated as one building.

8. ———: **Policies: Renewals.** Where at the expiration of a policy, an entirely new policy is written, the rights of the parties depend upon the terms of the policy in force at the time the loss occurs. The fact that the policy made at the expiration of a former policy is called by the agent a "renewal" policy does not change or affect the situation.

9. ———: ———: **Mortgagee Clause.** The fact that the policy contains a clause making loss, if any, payable to a mortgagee does not require suit to be brought by such mortgagee. The insured is still the proper party to sue.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

AFFIRMED.

*Bates, Harding, Edgerton & Bates* and *Higbee & Mills* for appellant.

The court erred in refusing defendant's declaration 1. The policy explicitly designated and limited the insurance to "the barn." No additions or other structures were covered, or intended to be insured. Other buildings and additions were insured in this policy. The silo was a separate structure not covered by the policy. 19 Cyc. 665 (3); 13 Am. & Eng. Ency. Law (2 Ed.), 111, 112; Forbes v. Insurance Co., 164 Mass. 402; American Ins. Co. v. Neiberger, 74 Mo. 167; McHoney v. German Ins. Co., 52 Mo. App. 94.

*C. E. Murrell* and *Campbell & Ellison* for respondent.

(1) A policy of insurance is a "ready made" contract and will be most strongly construed against the insurer. Mathews v. Modern Woodmen, 236 Mo. 326; LaForce v. Company, 43 Mo. App. 518. (2) The language of the policy being chosen by the insurer it should be construed if practicable so as to cover the subject-matter intended to be covered. The rule being to support the contract of indemnity when possible. 19 Cyc. 664. (3) It was the intention of the parties the contract of insurance should "cover everything." After the loss the contract will be construed according to the intention of the parties. Marsh Oil Co. v. Company, 79 Mo. App. 21; Norris v. Company, 65 Mo. App. 632. (4) When the subject of the insurance is described as a "building" the entire structure though composed of several parts is included. 13 Am. & Eng. Ency. Law (2 Ed.), 108.

TRIMBLE, J.—This is an action on a policy of tornado insurance. The controversy is over the question whether or not the property damaged by the

windstorm was covered by the policy. A jury was waived and the cause was tried by the court. No declarations of law or findings of fact were asked or given. Judgment in the sum of $507, the amount sued for, was rendered for plaintiff, and defendant appealed.

In addition to $2000 on plaintiff's residence, the policy provided for "$3500 on the shingle-roof frame barn building situate on same premises, $1000 on the shingle-roof frame barn 100 feet north of first described barn." The action is for loss on the shingle-roof frame barn building" above described. The windstorm did only $8 or $10 worth of damage to the roof of the building but blew down the silo. Defendant contends that it was a separate structure not constituting a part of the "barn building" and hence was not covered by the policy. Plaintiff insists that the silo formed a part of the building and that the whole was insured as one building.

Insurance is a matter of contract, and the intention of the parties, if it can be ascertained, must determine the sense in which terms employed are used. Of course if that sense is clearly expressed in the policy, then the written terms are binding and conclusive. But if the policy does not clearly express the meaning to be attached to the terms used in describing the property insured, then resort may be had to the surrounding circumstances to ascertain the meaning. In doing so we must have in mind that a policy of insurance, so written as to require construction of its meaning, will be construed in favor of rather than against the insured. It is a contract drawn by the insurer, and, when it is open to two possible interpretations, that one will be adopted which is least favorable to the party drawing it. [Belch v. Schott, 171 Mo. App. 357.] The language of the policy should be construed, if practicable, so as to cover the subject-matter intended to be covered. [19 Cyc. 664.] "If the

words employed of themselves, or in connection with other language used in the instrument, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed in favor of the insured.'' [LaForce v. Williams Ins. Co., 43 Mo. App. 518, l. c. 530.]

The words of the policy indicate that a certain entire ''building'' was to be insured. So far from excluding therefrom anything which might not come strictly and technically within the meaning of the term ''barn,'' the policy does not limit itself thereto but describes a certain ''frame barn building.'' The other barn included in the policy was not described as a ''building'' but merely as a ''barn.'' If there is any distinction to be drawn from the difference in the language used, it would seem to be in favor of the insured, since the policy describes the structure, which might be considered something more than a barn, as a ''barn building'' and the other structure merely as a ''barn.'' But we place little or no significance upon this difference in the descriptive terms used. The question as to what the policy covers depends upon whether or not the silo could be said to form a part of the building, and what was the intention of the parties when the insurance contract was entered into. Were the barn and silo so constructed as to constitute one building and bring the structure within the meaning of that term so as to make it reasonable that it was the intention of the parties that the whole should be insured? It is true, the structure which defendant would now term the barn proper was built a year or more before the silo was erected. But this difference in time of erection would make no difference if the two were so erected and joined together in such way as to constitute in fact one building. Whether or not

a structure added to a building is to be considered a part of the whole building depends upon a number of things. It would seem that if the addition was erected in such close proximity to the other structure as to be physically joined thereto, and is so arranged that the addition can only be used in connection with the main structure, and that the two are devoted to one general common purpose and are occupied and used by one owner, then they could be treated as one structure or building. This is undoubtedly the rule in determining whether or not a structure can be considered a part of another building in burglary and arson cases, and the same rule would apply in cases of insurance. [Workman v. Insurance Co., 22 Am. Dec. and note thereto p. 150.] Applying this rule it will be seen that the evidence is ample to establish the fact, or rather to justify the court, sitting as a trier of the facts, in finding that the barn and silo constituted one building. Plaintiff testified that "there are two silos built in the barn and the windows of the barn are built right into the silos and the only passage to them is through the barn." He also testified that the barn was built entirely around the silo. But by this we understand him to mean that the sides of the barn were extended to the silo so as to make the latter a part of the building and making the silo somewhat like a bastion. The two were of the same material. The only means of entrance to the silo was through the barn. Again, the barn was used for the purpose of feeding cattle. That feed was kept in the building, the hay in the loft, the grain in the granary, and the ensilage in the silo. All were devoted to the same purpose. The only difference between the feed in the silo and the rest of the barn was that the feed in the former was preserved green food while the feed in the latter was dry food. So that, under the rule above mentioned, it would seem to be clear that the structure constituted one

building, and would readily be considered as such, not only for the purpose of effecting insurance thereon, but also in the actual use of the structure. Turning now to the nature of the contract and the intention of the parties in making it, it can be seen that they considered it as one building. At least the evidence is sufficient to justify the court in finding that they so considered it. Defendant's agent sought plaintiff to insure in the defendant company. Plaintiff, being a very busy man, told the agent to go over to his premises "and insure everything." The agent went to plaintiff's home, made a list of the insurable property on the premises and prepared the policy in suit. The agent claims she never saw the silo. But she knew of its existence, she never told plaintiff the silo was not insured, and if she did not inspect the barn closely enough to discover that the silo was a part thereof that was her fault for which the plaintiff is not responsible. She undertook the task of going over there to ascertain the property to be insured. Plaintiff had no knowledge that she had received oral instructions from the state agent not to insure silos. These oral instructions amounted to nothing, so far as plaintiff was concerned, if the structure, including a silo, was insured. In addition to these, there were other facts in evidence which would justify an inference that the situation was known to the agent and that the policy was intended to cover the entire building as it stood. And it was not intimated in any way that the silo was not considered a part of the building nor covered by the insurance until after the loss had occurred, although defendant had a policy thereon previous to the one in suit. This prior policy was written May 3, 1908, and expired May 3, 1911, when the one in suit was written to expire May 3, 1914. The silo was added to the barn August, 1907. The windstorm occurred March 23, 1914, and, of course, the suit was on the last

mentioned policy. It is alleged that these were mere
"renewal" policies of a still earlier policy written in
1905 before the silo was added. But the direction of
the plaintiff to defendant's agent to "insure every-
thing" and the trip of the agent to plaintiff's premises
was made after it was built. At the time of this trip,
the agent made a list of the property and although the
agent says she thinks it was made in 1908 yet the list
or statement so made shows on its face that it was
made not earlier than 1911. Each policy was a new
one, out and out, and the claims of the parties are to be
determined by the terms of the policy in force at the
time of the loss and the rights conferred thereby.
There was nothing in the policy stating it was a mere
extension of former policies and we fail to see wherein
those rights can be affected because the agent con-
siders and calls the present policy a renewal. So that
since May 3, 1908, defendant has had insurance upon
a structure as one building which, in its physical con-
struction, use, and occupation, *is* one building and was
so considered by all parties until after the loss oc-
curred, when it is claimed that the policy does not
cover the loss because the portion suffering the great-
est damage is not a part of the building but a separate
structure. Where the subject of the insurance is de-
scribed as a "building" the entire structure, though
composed of several parts is included if the parts are
so joined as to be used as one and devoted to the same
common purpose. [Pettit v. State Ins. Co., 41 Minn.
249; Gross v. Milwaukee Mechanics Ins. Co., 92 Wis.
656; 13 Am. & Eng. Ency. of Law (2 Ed.), 108.] In
the Pettit case, supra, page 303, it is said, "the plain-
tiffs reposed such trust in the agent of the defendant
that it was left to him both to select the company and
formulate the description of the policy (and this he
must have understood), *and it is to be presumed that
he was familiar with the structure of the elevator, its*

*divisions, manner of its use and description.''* This
applies with force to the facts of this case.

It is urged that as there was a clause in the policy
making ''loss if any payable to a mortgagee as its
interest may appear,'' plaintiff was not the proper
party to sue. This, however, is untenable. [Anthony
v. German American Ins. Co., 48 Mo. App. 65.]

With reference to the claim that the judgment is
excessive, it should be said that the only evidence as
to the extent of the loss was that of McKim the con-
tractor who placed the damage at $507.

The judgment is affirmed. All concur.