[No. 13765. Department Two.   May 17, 1917.]

## J. B. VIOLETTE, *Respondent*, v. QUEEN INSURANCE COMPANY, *Appellant*.[1]

INSURANCE—CANCELLATION OF POLICY — EVIDENCE — SUFFICIENCY. The jury was warranted in finding that a fire insurance policy had not been cancelled, as the assured supposed had been done, where the agent testified that it had not been cancelled or requested to be cancelled, that it was another policy that had been cancelled, and the assured's supposition arose from a misunderstanding.

SAME—PROPERTY INSURED—DESCRIPTION. A fire insurance policy on a stock of liquors "while contained in the two-story brick building," situated on a certain lot, covers liquors kept in a one-story frame addition, physically attached to and communicating with the main brick building, which had always been used in connection with the saloon rooms and in which the principal part of the assured's liquors were stored, the circumstances showing an intention to insure all of the liquors in stock; since the purpose of the description is merely identification in a general way, and the intention of the parties should govern.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered April 27, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action upon a fire insurance policy.   Affirmed.

*McCarthy, Edge & Davis* and *Kemp & Baker*, for appellant.

*C. B. Hughes* and *Hughes, Sumner & Adams*, for respondent.

PARKER, J.—The plaintiff, Violette, seeks recovery upon a fire insurance policy issued to him by the defendant, insuring his stock of liquors kept for sale at his saloon in Leavenworth, in Chelan county.   The policy was issued August 1, 1914. The fire occurred, resulting in total loss of the goods insured, on December 30, 1914.   Trial in the superior court for Chelan county resulted in verdict and judgment in favor of the plain-

[1]Reported in 165 Pac. 65.

tiff, awarding him $1,560, from which the defendant has appealed to this court.

It is first contended in appellant's behalf that the policy was cancelled at the instance of the respondent on December 12, some two weeks prior to the occurrence of the fire. This contention involves nothing but a question of fact, as we view it, which was determined by the jury in favor of the respondent. It seems to be rested upon alleged admissions and contentions made by respondent inconsistent with his claim under this policy. This apparent inconsistent attitude of respondent grew out of his misunderstanding of what was said and done by himself and Robert B. Field, the agent of appellant and other insurance companies at Leavenworth, looking to the cancellation of one of several policies on his stock of liquors, which policies had been issued by Field as agent of the several insurance companies. It is plain that, on December 12, respondent requested Field to cancel one of the policies, and that, laboring under the impression that it was this policy which was cancelled in pursuance of that request, he sought *pro rata* recovery for his loss from the other companies, when it developed that one of the policies so sought to be recovered upon had been cancelled by Field instead of this policy. Field testified that this policy was not cancelled, nor requested to be cancelled by respondent. Appellant did not tender back to the respondent the premium which would have remained unearned on this policy until long after the fire, which premium had been paid in full shortly after issuing the policy and long before the fire. All of the policies had been left with the agent, Field, for safe-keeping. In fact, respondent did not see any of the policies until after the fire. There was simply an understanding that the policies be issued and so retained. It seems quite plain to us that the jury were fully warranted by the evidence in concluding that this policy was not cancelled before the fire as claimed by appellant. We think this branch of the case needs no further discussion.

It is further contended in appellant's behalf that the larger part of the goods destroyed was at the time in a room not in the building described in the policy as being the location of the insured goods, and that, therefore, such portion of the goods was not covered by the policy. This involves the question of whether or not this room was a part of the building described in the policy. The jury, by answers to two interrogatories submitted to them, found that, of the goods destroyed, $1,450 worth were in the saloon room, while $4,920 worth were in the room claimed by appellant not to be a part of the building described in the policy. The jury awarded respondent $1,560 as the *pro rata* liability of appellant with other insurance companies having concurrent insurance upon the goods, finding in effect that the room claimed by appellant not to be a part of the building was in fact a part of the building, which question the court, by its instructions, submitted to the jury for decision. The goods and their location were described in the policy as follows:

"The following described property while located and contained as described herein, and not elsewhere, to wit: $2,500 on stock of wines, liquors, cigars, soft drinks and all other goods usually kept for sale in a first class saloon; all while contained in the two story brick building, with composition roof, situate on lot 3, block 1, Ralston Addition to Leavenworth, Wash."

The walls of the main portion of the building were constructed of brick. It was about eighty by ninety feet in area upon the ground. It faced the street to the north. It had four rooms on the ground floor, the second floor being used as a hotel. Respondent's saloon proper occupied the east room on the ground floor, which was eighteen by eighty feet. At the time of the fire, back of the saloon room and a portion of the room next west thereof, there was a room eighteen by thirty feet, one story high. It was built of wood, with a roof of somewhat similar material as on the main building. This room had been used since its construction, several years prior

to the fire, wholly in connection with the main building, both as a kitchen in connection with a restaurant in the room next west of the saloon room, and also as a liquor store room in connection with the saloon. It was known as "Violette's Liquor Room" long before the issuing of this policy. This room or structure was physically attached to the brick wall of the main building. Its sills projected into, and were supported by, the brick wall of the main building, and its roof was also attached to the brick wall. There was a door from the room next west of the saloon room leading into the liquor room, and there was access from the saloon room to liquor room over a small porch through the rear wall of the saloon room and thence into the liquor room. Respondent held all three of these rooms under lease. While this outside room was known as "Violette's Liquor Room," it is not very clear as to what extent it had been used for storing his liquor prior to the issuance of this policy, though manifestly it had been then used to some extent for that purpose. After the issuing of the policy, the liquor room apparently was used to a much larger extent for that purpose. It is plain that the policy would have covered all liquor belonging to respondent within the brick walls of the main building regardless of which room of the building such liquor might be in, since no particular room of the building is mentioned in the policy. Therefore, the liquor room is no less a part of the main building, so far as this policy is concerned, by the fact that the only door from it directly into the main building led into the room next west of the saloon room. It is quite plain that the liquor room was never used for any purpose except in connection with the main building.

It seems plain to us, in the light of these facts, that there is ample warrant for the conclusion that this so-called liquor room was a part of the brick building described in the policy as being the location of the insured goods. As was well said by the Kentucky court in *Prussian Nat. Ins. Co. v. Terrell,* 142 Ky. 732, 135 S. W. 416:

"It must be borne in mind that a description in a policy of the building insured is never accompanied, or intended to be accompanied, by the particularity of an architect's plans and specifications. The purpose of the description is simply to identify in a general way the building insured."

In that case the building insured was described as a "brick gravel roof building." After the construction of the building but before the issuance of the policy, a brother of the insured was permitted to construct a room on the roof of this building for his own use for an indefinite period, covering evidently only a part of the roof some eighteen by sixty feet and ten or twelve feet high with a metal roof, the understanding being that the brother was to use it as long as he desired, and in the event he ceased to use it, he had the right to tear it down or let it remain and become the property of the insured. This structure was held to be a part of the building insured. It is somewhat difficult to see that this structure was any more a part of the building insured, though constructed on top of it, than the structure called the liquor room here involved was a part of the building described in the policy.

In *Gross v. Milwaukee Mechanics' Ins. Co.*, 92 Wis. 656, 66 N. W. 712, the policy involved insured goods "while contained in the one story frame store building situated," etc. At the time the policy was issued, the main building had a leanto or shed in the rear with a door opening into the main building. The two structures were used together. Thereafter the shed was moved about twenty feet back from the main building and an addition was built back to within three feet of the shed, which had been moved back, it being attached to the new addition by a platform nailed to both structures, with doors for convenient passage from one to the other over the platform. Thereafter, all the structures were used together. After noticing some of its earlier decisions, the court concluded that:

"Such addition, former main building, and shed, all connected and used together, constituted the one-story frame

store building within the meaning of the policies at the time the loss accrued."

In *Still v. Connecticut Fire Ins. Co.*, 185 Mo. App. 550, 172 S. W. 625, the policy involved was upon a "shingle-roof frame barn." A silo was built against the side of the barn so that it had openings directly to the inside of the barn, though the structure itself was outside the walls of the barn. The silo was held to be part of the barn, the court observing:

"Insurance is a matter of contract, and the intention of the parties, if it can be ascertained, must determine the sense in which terms employed are used. Of course if that sense is clearly expressed in the policy, then the written terms are binding and conclusive. But if the policy does not clearly express the meaning to be attached to the terms used in describing the property insured, then resort may be had to the surrounding circumstances to ascertain the meaning. In doing so we must have in mind that a policy of insurance, so written as to require construction of its meaning, will be construed in favor of rather than against the insured. It is a contract drawn by the insurer, and, when it is open to two possible interpretations, that one will be adopted which is least favorable to the party drawing it. *Belch v. Schott*, 171 Mo. App. 357, 157 S. W. 658. The language of the policy should be construed, if practicable, so as to cover the subject-matter intended to be covered. 19 Cyc. 664."

The circumstances attending the issuance of the policy here involved point to an intention on the part of the insured, and also on the part of Field, the agent, to insure all of respondent's stock of liquors. This, we think, renders the above quoted language of the Missouri court quite pertinent here.

The following authorities lend support to the conclusion that this so-called liquor room was in fact a part of the building described in the policy as the location of the insured goods: *Commercial Fire Ins. Co. v. Allen*, 80 Ala. 571, 1 South. 202; *White v. Mutual Fire Assurance Co.*, 8 Gray (Mass.) 566; *Westfield Cigar Co. v. Insurance Co. of North America*, 169 Mass. 382, 47 N. E. 1026; *Workman v. In-*

*surance Co.*, 2 La. 507, 22 Am. Dec. 141; 1 Wood, Fire Insurance (2d ed.), § 85; 2 Joyce, Insurance, § 1739.

Counsel for appellant cite, and place some reliance upon, our recent decision in *Johnson v. Franklin Ins. Co.*, 90 Wash. 631, 156 Pac. 567. Plainly we think that decision is of no controlling force whatever here, in view of the fact that the goods destroyed were at the time several blocks distant from their described location in the policy.

We conclude that the judgment must be affirmed. It is so ordered.

ELLIS, C. J., MOUNT, FULLERTON, and HOLCOMB, JJ., concur.