(August 2, 1924.)

LEO BROTHERS COMPANY, Respondent, v. NEW ZEALAND INSURANCE COMPANY, Appellant.

[228 Pac. 257.]

INSURANCE—COVERAGE CLAUSE — INTERPRETATION — MAIN BUILDING — SHED CONNECTED THEREWITH.

In an action on a fire insurance policy, evidence held sufficient to show that policy intended to cover shed connected with main building by a roof.

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

Aug. 1924.]    Leo Bros. Co. *v.* New Zealand Ins. Co.    549

Opinion of the Court—McCarthy, C. J.

Action on insurance policy. Judgment for plaintiff. *Affirmed.*

E. Eugene Davis and Orland & Lee, for Appellant, cite no authorities.

Frank L. Moore, for Respondent.

A policy of insurance should be construed according to the plain, ordinary and usual meaning of the language used to carry out the intention of the parties as gathered therefrom. (*Arkansas Ins. Co. v. McManus,* 86 Ark. 115, 110 S. W. 797; *Palatine Ins. Co. v. O'Brien,* 107 Md. 341, 68 Atl. 484; *French v. Fidelity & Casualty Co.,* 135 Wis. 259, 115 N. W. 869, 17 L. R. A., N. S., 1011; *Wisconsin Zinc Co. v. Fidelity & Deposit Co.,* 162 Wis. 39, Ann. Cas. 1918C, 399, 155 N. W. 1081; *Jennings v. Brotherhood Acc. Co.,* 44 Colo. 68, 130 Am. St. 109, 96 Pac. 982, 18 L. R. A., N. S., 109; *Cutting v. Atlas Mut. Ins. Co.,* 199 Mass. 380, 85 N. E. 174.)

Where the subject of insurance is described as a building the entire structure composed of several parts is included if the parts are so joined as to be used as one and devoted to the same common purpose. (*Pettit v. State Ins. Co.,* 41 Minn. 299, 43 N. W. 378; *Gross v. Milwaukee Mechanics' Ins. Co.,* 92 Wis. 656, 66 N. W. 712; *Still v. Connecticut Fire Ins. Co.,* 185 Mo. App. 550, 172 S. W. 625; *Henry Clay Fire Ins. Co. v. Crider,* 191 Ky. 121, 229 S. W. 128; *Prussian Nat. Ins. Co. v. Terrell,* 142 Ky. 732, 135 S. W. 416; *Violette v. Queen Ins. Co.,* 96 Wash. 303, 165 Pac. 65.)

McCARTHY, C. J.—This is an action upon a fire insurance policy, by which appellant insured certain machinery in respondent's vinegar factory, the covering clause being as follows:

"$3000.00—On Fixed and Movable Machinery of every kind and description, all while contained in the three story brick and frame Building, situate at No. 244 on the East side of Main Street, between 'A' and 'C' Streets, in Moscow, Idaho."

The covering clause has the following notation:

> "Insurance Map
> Sheet 4
> Block 102
> No. 244"

The policy was written by Fred Veatch as agent for appellant. He was also manager and secretary of Leo Brothers Company, respondent, and a stockholder. He thus acted for both parties in the transaction. No point, however, is made of this fact.

Fire, occurring July 6, 1921, damaged the tank shed of respondent and certain machinery contained therein. The controversy arises over the question whether the machinery in this tank shed, used in connection with respondent's vinegar factory, was covered by the policy.

Judgment was for plaintiff. This appeal is from that judgment and an order denying a motion for a new trial.

There are numerous specifications of error, but they all go to the one point of insufficiency of the evidence. The particulars in which the evidence is insufficient are not clearly specified in the brief. However, one of the specifications is that the court erred in denying the motion for a new trial. The notice of motion for a new trial specifies that the evidence is insufficient to establish a contract of insurance covering the property destroyed, or to establish that the property destroyed falls within the description in the policy. These questions are argued in the briefs, and we will consider them.

The evidence shows the following facts without any substantial conflict. The factory building was originally a three-story brick structure. To this on the north and east were added frame additions. The tank shed was originally built about 35 feet to the south but was enlarged or rebuilt until in 1915, the north side of the shed paralleled the main buildings at a distance of about 15 feet. This space was occupied by a scale shed, wooden approach thereto, and concrete paved driveway. The scale platform joined the frame part of the main group on the north and extended over into the

open side of the tank shed on the south. Over the scales, for a distance of about 16 feet, a composition roof joined the frame part of the main building to the tank shed. This scale shed roof was securely built into the main building on the one side, and the tank shed on the other, its rafters resting upon the same "plate" which supported the rafters of the main building, and upon a timber fastened to the upright posts of the tank shed about 18 or 20 inches below the "plate" of the shed. The driveway was closed at each end by gates, the one at the east end joining the two buildings, and operating on a track which allowed it to slide into the tank shed. This was the nature of the completed plant in 1915, and in which the machinery stood at the time of the fire, July 6, 1921. The policy was written November 19, 1920, and covered a period of one year. The whole group of buildings, including the tank shed, was operated as a single vinegar manufacturing plant, the vinegar being pumped back and forth from the main building to the tanks during the process of manufacture, "racking off," filtering and loading for shipment.

The insurance map referred to in the covering clause was Sanborn's insurance map of Moscow, used by all insurance companies and their agents in writing insurance and making reports. On this map the entire plant, including the tank shed, is designated as No. 244. Veatch had a map of his own on which he had designated the main building as No. 244 and the tank shed as No. 240. He had issued some policies on the tank shed alone for other companies, designating it as No. 240. It is apparent that he used the No. 240 in these policies to distinguish the tank shed from the main building. He used the number 240 at a time when the original condition existed, before the main building and tank shed were joined by the roof. The number 240 did not appear on Sanborn's map; there is no evidence that appellant knew anything about it, or about these other policies. Veatch's report of the transaction to appellant referred to the property covered as No. 244. The rate-book introduced in evidence showed that separate rates would be

allowed on the main building and the tank shed if insured separately, the separate rate for the former being 250 and the latter 245. The policy in question made a rate of 250.

Appellant contends that the coverage clause does not cover the tank shed when interpreted in the light of all the circumstances, especially the Sanborn's map and the rate-book.

The determination of this case depends upon a consideration of the situation and relation of the tank shed with reference to the rest of the plant, as disclosed by the evidence, and the application of the terms of the coverage clause as they appear in the policy accepted by the company. The fact that Veatch had taken out and issued other policies upon the tank shed, tanks and vinegar has no bearing upon this question. Because units of the plant had been separately insured, appropriately designated, it does not follow that the whole plant could not be insured in one policy. The fact that Veatch used No. 240 for his own convenience, to distinguish policies on the tank shed from those covering the whole plant, has no significance in connection with the policy in question. Particularly is this true when it is considered that he had initiated the use of this number years before, when the tank shed was an isolated building— before it was ever connected up with the main plant. Moreover, it must be remembered that appellant knew nothing about the number 240, or its use in connection with policies. The fact that a lower rate was quoted in the rate-book on the tank shed, if insured separately, is not a controlling circumstance in view of all the other evidence. In this case the premium charged was the higher rate on the whole plant. Therefore it cannot be contended that appellant was underpaid. The policy in question insured the machinery of the plant "of every kind and description, all while contained in the three story brick and frame building situate at No. 244 on the east side of Main Street, between 'A' and 'C' streets." Counsel for appellant conceded on the trial that there would have been no controversy if the machinery had been in either the frame addition to the north, or the one to the

east of the brick structure. We can see no reason for drawing a fine distinction to cut off the tank shed from the rest of the plant. The whole group constituted a single manufacturing unit, the vinegar being pumped back and forth from one addition to another, and the machinery, such as the pump, hose and spare parts, was carried back and forth as the occasion required. The covering clause, fairly interpreted, included the tank shed. (*Henry Clay Fire Ins. Co. v. Crider*, 191 Ky. 121, 229 S. W. 128; *Still v. Connecticut Fire Ins. Co.*, 185 Mo. App. 550, 172 S. W. 625.) For two well-considered opinions, involving similar facts and reaching a similar conclusion, see *Norwich Ins. Co. v. Leo Bros.*, U. S. Dist. Court for Idaho, opinion by Judge Dietrich, Unreported, and same case, opinion of Circuit Court of Appeals, for the 9th Circuit, 297 Fed. 689.

We conclude that this description was meant to include the entire machinery found in the plant as a unit, including the additions and tank shed physically connected to the original brick building, that the evidence is sufficient to support the findings and judgment, and the court did not err in denying the motion for a new trial. The judgment and order denying a new trial are affirmed, with costs to respondent.

Budge, William A. Lee, JJ., and Johnson, District Judge, concur.

Wm. E. Lee, J., being disqualified, took no part.