### SECURITY NAT. FIRE INS. CO. et al. v. KIFURI. (No. 8085.) *

Court of Civil Appeals of Texas. San Antonio.
Nov. 28, 1928.

Rehearing Denied Jan. 2, 1929.

T. M. West and Nelson Lytle, both of San Antonio, for appellants.

David E. Hume, of Eagle Pass, for appellee.

COBBS, J. On March 1, 1928, appellee sued appellants Security National Fire Insurance Company on a policy of fire insurance, for the sum of $3,000, against the National Liberty Insurance Company of America for the sum of $3,000, against the Fireman's Fund Insurance Company of San Francisco, Cal., on a fire insurance policy in the sum of $4,000. These three appellants over their protest were joined as codefendants in this one suit, brought by appellee against them jointly, and for a joint judgment against the appellants for $20,000.

Appellants first filed separate pleas in abatement, as follows: Security National Fire Insurance Company, National Liberty Insurance Company of America, Fireman's Fund Insurance Company of San Francisco, Cal., which were by the court overruled and exceptions duly taken by each insurance company. Appellants then filed separate pleas of misjoinder of causes of action and parties defendant, as follows: Security National Fire Insurance Company's plea, National Liberty

Insurance Company of America, and Fireman's Fund Insurance Company of San Francisco, Cal. These three pleas of misjoinder were by the court overruled, to which action of the court each appellant duly excepted.

Thereupon each defendant filed separate supplemental answers, containing general and special exceptions and general denial, which the court overruled in detail, and the case then proceeded to trial before a jury as one joint suit upon special issues, which the jury answered in favor of appellee, whereupon a judgment was rendered against the appellant Security National Fire Insurance Company for $3,000, and against the National Liberty Insurance Company of America for $3,000, and a judgment against the Fireman's Fund Insurance Company of San Francisco, Cal., for $4,000. From this judgment, appellants jointly and separately appealed.

■ The first point presented is that separate causes of action and separate and distinct defendants cannot be joined in the same action. We overrule that contention, because the fire insurance policies require the assured to collect from each of several companies on a pro rata basis, in proportion to the several policies, the amount of recovery. This can only be practicably done by having the liability fixed in a joint suit.

It is provided in each of the policies: "This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall bear to the whole insurance * * * and the extent of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto." Fegelson v. Niagara Fire Ins. Co., 94 Minn. 486, 103 N. W. 495.

Under the policy terms set out in Hartford Fire Ins. Co. v. Post, 25 Tex. Civ. App. 428, 62 S. W. 140, relied upon by appellant, the basis for settling with insured is complete without reference to any other coinsurance, except as to amount of such other insurance, viz., in the Post Case all that is necessary in order to determine the amount chargeable to any one of the companies, under a partial loss, is to find the amount of partial loss ascertain the amount of coinsurance, and charge such company with its proportion of the partial loss so fixed. Upon the other hand, in the policies here involved, the loss is to be paid pro rata by each insurance company in the proportion of the amount of insurance carried.

Thus: Under the policies involved in the Post Case we shall say that three different companies are each carrying $3,000 policies, under which each company is required to pay according to its proportion of total insurance (which means without reference to what any other company pays). In separate trials the actual loss was fixed differently, as follows:

$5,500; $6,000; $6,500. The companies would separately be required to pay, respectively, as follows: $1,833.33; $2,000; $2,166.66. The policies do not require pro rata payment.

In the instant case the policies require the assured to collect from each company on a pro rata basis in proportion to the amounts of the several policies. By separate trials and separate and different findings as to loss the determination of a pro rata is impossible. Since a common figure of loss is necessary to determine the pro rata recovery, the policies are interdependent, and recovery must be fixed in a joint suit.

[2] Mr. Kifuri testified that it was not required that he should certify to them, they just asked for an estimate, which he gave. He sent one to the company, and kept one. The first estimate was not acceptable but he made another which the company kept as satisfactory. He said: "They made no objection until yesterday, waited from November 3, up to date I sued them and they made no objection to it." That estimate was received November 21, 1927. Hibernia Ins. Co. v. Starr (Tex.) 13 S. W. 1017.

The property was damaged by fire September 14, 1927, and proof of loss was delivered November 2, 1927, and retained by the company without objection. Demand for appraisal was made February 8, 1928, more than 4½ months after, which was too late. According to the provisions of the policy, the appraisal must have been demanded within 90 days of the fire. The issue was submitted to the jury, and found that, by their action and conduct, and their failure to accept plaintiff's offer of appraisement, plaintiff was released from the necessity of submitting to appraisement. So this disposes of the question relating to the demand for appraisement.

Here the insurer disclaimed liability for so much of the insured property as became part of the insured building by affixation; and, after reciting list of appliances which had become a part of the building by affixation, the paragraph reads: "All of the above articles mentioned in said Paragraph No. 4 being machinery used in manufacture or storing ice and is no part of the building insured by the defendant." Connecticut Fire Ins. Co. v. Hilbrant (Tex. Civ. App.) 73 S. W. 558.

The insurance covered "the one story metal roof G. I. & Stucco Building and additions attached thereto, including foundations, permanent piping and fixtures for heating, lighting and water service, while occupied for the following purposes only: Ice Factory.".

The pleading and the evidence showed a claim for the certain designated machinery, attached as a permanent improvement to the building, for permanent use. The testimony showed in detail the several items of machinery affixed to the building or a part of the permanent piping for water service; that the main plant was totally destroyed down to

the building; that the refrigerating plant and roof is gone, and all that is left is the walls.

The plaintiff further testified: "Now the brine tank, twelve-ton capacity, that is made all together connected with the wall and part of the building. The whole tank consists of iron tanks and framework; it weighs a whole lot. I said 12-ton capacity. I meant 12-ton capacity of ice. It could not be moved. There is no machinery made to move that. Part of it was the wall of the building and we added three sides to that wall and that completed the four sides of the building. The value of the brine tank was pretty close to $2,000.00."

The price of the various equipment affixed to the building, f. o. b. Eagle Pass, was $4,022. The items and prices are not set out separately, but are lumped under the sum of $4,022.

This equipment was placed there as permanent fixtures for permanent use, suitable to an ice factory. The steam engine was bolted down to the wet cement for permanent erection, and it was valued about $1,000. The ammonia compressor and permanent piping, all bolted to the floor, were of the value of $1,000. The roof of that building extended over the brine tank and to the wall.

The agent of the insurance company went out and inspected the ice factory before insuring the property. Pacific Fire Ins. Co. v. John E. Morris Co. (Tex. Civ. App.) 1 S. W. (2d) 348; Still v. Connecticut Fire Ins. Co., 185 Mo. App. 550, 172 S. W. 625; Hutchins v. Masterson, 46 Tex. 551, 26 Am. Rep. 286; Phelan v. Boyd (Tex.) 14 S. W. 290; C. J. vol. 26, pp. 72, 74, 90.

■■ When a building is not a total loss, the difference between its value immediately before and after the fire, not to exceed the amount of the policy, is the correct measure of damages. The jury found that the difference in value of the bare building after the fire was $6,000. The testimony showed that it would cost in the neighborhood of $6,000 to replace it, excluding the value of pipes, fittings, or metal machinery. The value of the equipment when added to $6,000 would swell the figure to more than $10,000—the total amount of the insurance. And Kifuri testified that the building cost him more than $15,000 to build. German Ins. Co. v. Everett, 18 Tex Civ. App. 514, 46 S. W. 95.

If the issue requested by appellant had been given as to the measure of damages, the answer would probably not have differed from the testimony of the two witnesses who testified how much it would have cost to repair the building. Witness Meyer, for appellee, testified that it would cost in the neighborhood of $6,000, and S. B. Mitchell, witness for the insurer, testified that it could probably be replaced for $5,500.

The value of the bare building to build was $15,000; and, if $6,000 of that value was de-stroyed, it would take $9,000 to rebuild. Under the issue as submitted only $6,000 was recovered as damage to the bare building, the balance being for additions and affixations. It was shown that two-thirds of the building was totally destroyed.

Much of appellants' brief, argument, and propositions are based upon the theory of separate suits. However, appellants were allowed to file separate and distinct pleadings, and, in that way, though not necessary at all, secured all the rights which the law vouchsafed to them.

However, they were proper, if not necessary, parties to the one suit to establish the proportionate liability.

We have very carefully considered all of appellants' assignments and all the points claimed as error and overrule them. The judgment of the trial court is affirmed.