ADELINE STEINKOHL, as Administratrix of the Estate of MAC M. STEINKOHL, Deceased, Plaintiff, *v.* BROOKMAN REALTY· CORPORATION, Defendant.

MARION WISCHNIE, as Administratrix of the Estate of ALEX WISCHNIE, Deceased, Plaintiff, *v.* BROOKMAN REALTY CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, March 14, 1945.

*Phillips, Nizer, Benjamin & Krim* (*Louis Nizer* and *Walter S. Beck* of counsel) for plaintiffs.

*Clarence E. Mellen* for defendant.

PECORA, J. On August 4, 1941, two employees of the Premier Linen Supply and Laundry Service, Inc. (hereinafter called '' Premier ''), named respectively Mac M. Steinkohl and Alex Wischnie, were fatally injured by the fall of a freight elevator of which they were the sole passengers, in the premises Nos. 328–330 Avenue B, in the borough of Manhattan, city of New York. Plaintiffs, in their respective capacities, brought those actions to recover damages for the death, as well as the pain and suffering, of their respective intestates. The actions were consolidated for trial purposes, and the trial was had before this court without a jury.

At the time of the accident, the defendant Brookman Realty Corporation (hereinafter referred to as '' Brookman ''), was the owner of the aforesaid premises, which were situated on the northwest corner of East 19th Street and Avenue B. It also owned the adjoining building Nos. 332–334 Avenue B, as well as the next adjacent building, Nos. 336–342 Avenue B, at the southwest corner of East 20th Street. These three buildings occupied the whole block front of the west side of Avenue B between East 19th and East 20th Streets. These buildings will hereinafter be referred to as '' A '', '' B '' and '' C '' respectively, starting with the building Nos. 328–330 Avenue B, and going north.

As already noted, the accident occurred in '' A ''. At that time '' Premier '' was the sole lessee and occupant of both '' A '' and '' B '', each of which was improved with a four-story building, both erected in 1911 and separated by a party wall.

At the same time '' Premier '' was also the lessee of the ground floor of '' C '', and occupied it, except for a small store which it had sublet, with '' Brookman's '' written consent, to one Katz, who operated a luncheonette therein. The structure on '' C '' was erected in 1913, and was only two stories high. It was so constructed that the northerly wall of '' B ''

was a party wall between " B " and " C ". The second floor of " C " was leased by " Brookman " to, and occupied by, a manufacturing concern named Berger Machine Co., concededly for a factory purpose.

It is not disputed that the premises demised to " Premier ", consisting of all of " A " and " B " and the ground floor of " C " (excepting the store occupied by the subtenant Katz), were used by it for the operation of a laundry, which, under section 296 of the Labor Law, is a factory purpose.

·The evidence is overwhelmingly sufficient to establish that the elevator in " A " (the one involved in the accident) was not in safe operating condition at the time of the accident and, to the knowledge of " Brookman," had not been for several weeks prior thereto.

The fundamental question in this case is whether " Brook- man," who was not in possession of " A ", " B " and " C " when the accident occurred, is liable to plaintiffs under the provisions of sections 315 and 316 of the Labor Law. Subdivision 2 of section 315 of that law defines a " Tenant-factory building " as " a building, separate parts of which are occupied and used by different persons and one or more of which parts is used as a factory." . Under subdivision 2 of section 316 " The owner of a tenant-factory building, whether or not he is also one of the occupants instead of the respective tenants, shall be responsible for the observance of the following provisions of this article, anything in the lease to the contrary notwithstanding: Section two hundred and fifty-five, elevators and hoistways * * *." Section 255 of the Labor Law provides that every elevator shall be equipped, maintained and operated " as to be safe for all persons ".

Where a building is leased in its entirety by an owner and the building is used as a tenant-factory building, such owner, notwithstanding he is not in possession, is nevertheless responsible for the observance of the requirements of section 255 of the Labor Law. (*Hente* v. *Shercoop Corporation,* 289 N. Y. 140.)

The determination of the question of " Brookman's " liability to plaintiffs depends upon whether " C " is deemed to be a separate building wholly independent of and dissociated from " A " and " B ", in which event " Brookman " would not be liable for the accident occurring in " A "; or whether " C " is held to be an annex to and a part of " A " and " B ", in a manner constituting " A ", " B " and " C " a single tenant-factory building, in which event " Brookman " would be liable under the doctrine of *Hente* v. *Shercoop Corporation* (*supra*).

No similar factual issue seems heretofore to have received the attention of the courts of this State. But in other jurisdictions, it has been held, upon reasoning which impresses this court as sound, that in deciding such questions, the courts must consider not only the structural features of the buildings but also their functional uses, availabilities and attributes. (See *Shaft* v. *Carey and Others,* 107 Wis. 273; *Belvidere Hotel Co.* v. *Williams,* 137 Md. 665; *Still* v. *Insurance Co.,* 185 Mo. App. 550; *Blake* v. *Exchange Mutual Insurance Company,* 12 Gray [Mass.] 265.)

The evidence shows that " Premier's " exclusive tenancy of building " A " commenced in 1921. When " Brookman " leased all of building " B " to " Premier " in 1930, " Brookman " made two openings in the party wall between " A " and " B ", on each of the four floors of the two buildings, thereby giving " Premier " interior access and communication between the two buildings on every floor. By this very 1930 lease of building " B " to " Premier ", the latter was also given the " unrestricted use " of the elevator in building " C ". " Premier " was enabled to enjoy such use because of openings leading into the elevator shaft which were made in the party wall between buildings " B " and " C " when the latter building was constructed in 1913. As a result " Premier " was entitled to use, and did use, all of buildings " A " and " B " and the ground floor of building " C " (excepting the small store space occupied by its subtenant Katz) for its laundry factory purposes, with interior access and communication through all three buildings

The evidence also shows that the lease of the ground floor of building " C " given to " Premier " by " Brookman " in 1937, provided for the installation of steam pipes to convey heat to all three buildings from the boiler room which was located in building " A ".

I have closely studied the many exhibits, and carefully considered the voluminous testimony presented by the able counsel for plaintiffs and defendant respectively. It is my conclusion therefrom that the finding is warranted that the three buildings, " A ", " B " and " C ", had a structural and functional unity constituting them a single building, which, because of the diversified tenancies in the part thereof herein referred to as " C ", and the known uses to which these tenants applied the premises, was at the time of the accident a " tenant-factory building ", as that term is defined in section 315 of the Labor Law.

It therefore follows, under *Hente* v. *Shercoop Corporation* (*supra*) that " Brookman " is liable for the damages caused by the accident. Judgment in the sum of $29,500 is awarded in favor of plaintiff Steinkohl upon the cause of action 'for death, and in the sum of $500 upon the cause of action for pain and suffering. Judgment in the sum of $34,000 is awarded in favor of the plaintiff Wischnie upon the cause of action for death, and in the sum of $1,000 upon the cause of action for pain and suffering. Settle judgments accordingly.